IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

CHURCH OF GOD IN CHRIST, INC., *individually*,
BOARD OF DIRECTORS *also known as* General
Board of Church of God in Christ, Inc, and
JONATHAN SAFFOLD, JR, *Individually and
as General Counsel of Church of God in Christ, Inc*,

    Plaintiffs,

v.                                                        Case No. 2:25-cv-03029-MSN-cgc

MOSES TYSON, JR.,

    Defendant.

---

### ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

---

Before the Court is Plaintiffs' Emergency Motion to Continue Ex Parte Temporary Restraining Order and Set Hearing for Preliminary Injunction (ECF No. 9, "Emergency Motion"), filed November 11, 2025.[1] Defendant Moses Tyson, Jr. never filed a response to the Emergency Motion. A hearing on the requested injunctive relief was held on January 6, 2026 ("January 6 Hearing"). (ECF No. 18.) For the reasons discussed below, Plaintiffs' Emergency Motion is **GRANTED**.

### BACKGROUND

As described in Plaintiffs' Emergency Motion, COGIC is "a Christian organization in the Holiness-Pentecostal tradition and is the largest Pentecostal denomination in the United States."

---

[1] Plaintiffs are: (1) Church of God in Christ, Inc. ("COGIC"); (2) the General Board of the Church of God in Christ ("General Board"); and (3) Jonathan Saffold, Jr.

(ECF No. 9-1 at PageID 93.)  The General Board functions as an executive decision-making body "as part of the Executive Branch of COGIC in Memphis, Tennessee." (*Id.*)  Bishop John Drew Sheard, the current Presiding Bishop of COGIC, functions as the corporate representative for COGIC and the General Board in this case and testified on their behalf at the January 6 Hearing. (*Id.*; ECF No. 18.)  Jonathan Saffold, Jr. is COGIC's General Counsel; he provided an affidavit in support of Plaintiffs' Emergency Motion and testified at the January 6 Hearing.  (ECF No. 9-9; ECF No. 18.)  Bishop Willie Green is one of COGIC's Jurisdictional Bishops, with authority over "The Ecclesiastical Jurisdiction of Florida Northwest COGIC, Inc."; he also provided an affidavit and testified at the January 6 Hearing.  (ECF No. 9-10; ECF No 18.)

Defendant Moses Tyson, Jr. likewise has longstanding associations with COGIC, its leadership, and its members.  He has served as a bishop and pastor in the COGIC community.  Mr. Tyson has also "performed and recorded with countless gospel, soul, funk, R&B, and inspirational artists," "put[] together his own albums[,] and set[] up his own independent label."  (ECF No. 9-1 at PageID 93–94.[2])

In the present case, Plaintiffs assert claims of defamation, false light invasion of privacy, tortious interference, and civil conspiracy against the Defendant based on allegedly defamatory emails, social media statements, and video interview recordings.  (ECF No. 1-3.)  The Emergency Motion argues the likelihood of success on the merits as to all of their claims except civil conspiracy. (ECF No. 9-1 at PageID 102–114.)  In their Emergency Motion, Plaintiffs request that this Court enter an injunction "restraining Defendant, and all persons acting in concert with him, from publishing, broadcasting, or disseminating any further defamatory statements, including

---

[2] The Court relates Mr. Tyson's background based on the representations of the Plaintiffs, to which the Defendant and counsel did not object or otherwise comment upon, either in writing or at the January 6 Hearing.

2

any references to 'thieves,' grand theft,' 'elder abuse,' 'fraud,' 'groupies,' or any other statement of similar defamatory import." (ECF No. 9-1 at PageID 93.)

## LEGAL STANDARD[3]

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). The Court considers four factors to determine whether to grant an injunction: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Id*. at 573. "[D]istrict courts weigh the strength of the four factors against one another," but "cannot eliminate the irreparable harm requirement." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (citation omitted). Further, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Abbas*, 60 F.4th at 385 (quoting *O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. 2015)). The movant carries the burden of persuasion, and the proof required to obtain a preliminary injunction exceeds that required to survive a summary judgment motion. *Leary*, 228 F.3d at 739 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)).

---

[3] The Court notes that Plaintiffs erroneously invoke the Tennessee Rules of Civil Procedure in their Emergency Motion. (*See* ECF No. 9-1 at PageID 101.) Although Tennessee law governs Plaintiffs' substantive tort claims, "federal law defines [a] district court's power to issue a preliminary injunction." *Stryker Emp. Co., LLC v. Abbas*, 60 F.4th 372, 382 (6th Cir. 2023) (citing *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991)). The error is ultimately of little import, however, as Tennessee law broadly mirrors the federal standard. *See, e.g.*, *Fisher v. Hargett*, 604 S.W.3d 381, 394 (Tenn. 2020).

**DISCUSSION**

At the outset, the Court recognizes that Defendant never responded to the Emergency Motion and defense counsel elected not to question any of the individuals who testified at the January 6 Hearing. Generally, pursuant to Local Rule 7.2(a)(2), "[f]ailure to respond timely to any motion . . . may be deemed good grounds for granting the motion." Nevertheless, where the remedy is extraordinary, as here, the Court exercises its discretion to consider the merits of the Emergency Motion and proceeds to consider the factors described above.

**1.    Plaintiffs Will Likely Succeed on the Merits**

When the conduct to be prohibited would be the same regardless of which claims plaintiffs prevail upon, they "need only show the likelihood of success of *one* of their claims." *Brown v. Greene Cnty. Vocational Sch. Dist. Bd. of Educ.*, 717 F. Supp. 3d 689, 694 (S.D. Ohio 2024) (citation omitted). "At the preliminary injunction stage, 'a plaintiff must show more than a mere possibility of success,' but need not 'prove his case in full.'" *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007). Generally, a plaintiff has carried the burden of showing a likelihood of success upon "rais[ing] questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Just City, Inc. v. Bonner*, 758 F. Supp. 3d 785, 797 (W.D. Tenn. 2024) (quoting *Husted*, 696 F.3d at 591 (6th Cir. 2012)).

Plaintiffs first argue that they are likely to succeed on the merits of their defamation claim. Under Tennessee law, defamation takes the forms of libel and slander, "libel being written defamation and slander being spoken defamation." *Hibdon v. Grabowski*, 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005) (citing *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc.*, 876 S.W.2d

818, 820 (Tenn. 1994)). "To establish a *prima facie* case of defamation, a plaintiff must prove that: (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (citations omitted). "'Publication' is a term of art meaning the communication of *defamatory* matter to a third person." *Id.* at 571–72 (emphasis added) (citing *Quality Auto Parts*, 876 S.W.2d at 821). Further, if the plaintiff is deemed a public figure, "they must also prove that the [] statements were made with '"actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Hibdon*, 195 S.W.3d at 58 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). Finally, "[u]nder Tennessee law, a plaintiff is required to prove actual damages in all defamation cases." *Id.* at 68 (citing *Handley v. May*, 588 S.W.2d 772, 776 (Tenn. Ct. App. 1979).

    A.    Defendant published his statements

As to the first element, publication: based on the uncontroverted evidence in the exhibits to the Emergency Motion, the testimony at the January 6 Hearing, and the exhibits presented at the January 6 Hearing, there is no question that the Defendant published both written and spoken statements. On July 15, 2025, Defendant sent an email to over 30 people alleging crimes by COGIC and its leadership, including accusations of perjury, fraud, theft, and abuse. (ECF No. 9-2.) On July 27, 2025, the Defendant sent an email to 30 individuals accusing COGIC and its agents of taking "MILLIONS IN THEFT," selling "STOLEN CHURCH PROPERTIES," and lying to "the Judge in Houston, just like [they] 'LIED' to the Judge in Florida." (ECF No. 9-4 at PageID 121–23.) On August 17, 2025, Defendant sent another email again accusing COGIC and Bishop Sheard of "trying to STEAL HTC CORPORATE CONTROL" and accusing them of lying "TO

5

THE COURT." (ECF No. 9-3 at PageID 119.) He further states that COGIC leadership and Bishop Sheard should be reported "to the POLICE FOR ELDER ABUSE." (*Id.* at PageID 120.) In another email, he accuses Mr. Saffold of "FRAUD, LIES & ABUSE," including suggestions of perjury and material misrepresentation. (ECF No. 9-8 at PageID 136.) Other evidence of published written material abounds. *See generally* ECF Nos. 9-5, 9-6, 9-7, and 9-8.

There is also ample evidence that Defendant published his statements verbally, chiefly through appearances on podcasts. On October 26, 2025, the Defendant appeared on The Juice Radio and Talk Show for a panel discussion that now has over 22,000 views. The Juice Radio and Talk Show, *COGIC Lawsuit Explained! Moses Tyson Jr Shares Information He's Being Sued by COGIC* (YouTube, Oct. 26. 2025, https://www.youtube.com/watch?v=kDfuxaiUOS4). During that appearance, Defendant accuses COGIC of, among other things, "ripping off" over $600,000, *id.* at 5:05–5:10, and trying to "steal [] property." *Id.* at 7:25–7:35. Four days later, on October 30, 2025, the Defendant appeared on the same show for a one-on-one interview that now has over 6,000 views. The Juice Radio and Talk Show, *Moses Tyson Jr Speaks Out About The COGIC Lawsuits and Why He Won't Back Down from COGIC Leadership* (YouTube, Oct. 30, 2025, https://www.youtube.com/watch?v=qD7LiJx4upg). During that appearance, Mr. Tyson says COGIC has "illegally taken" churches, *id.* at 13:48–52, "illegally removed" pastors, *id.* at 13:55–13:58, tried to take local church properties, *id.* at 14:04–14:10, and "submit[ted] false information to the court." *Id.* at 14:10–14:14. Defendant also accuses COGIC agents of being "abusive." *Id.* at 22:09–22:17.

B.     Defendant's statements were defamatory

A written or spoken statement is properly considered defamatory if "it tends to so harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third

6

persons from associating or dealing with him [or her]." *Secured Fin. Sols., LLC v. Winer*, No. M200900885COAR3CV, 2010 WL 334644, at *2 (Tenn. Ct. App. Jan. 28, 2010) (alterations in original) (quoting *Biltcliffe v. Hailey's Harbor, Inc.*, No. M2003–02408–COA–R3–CV, 2005 WL 2860164, at * 4 (Tenn. Ct. App. Oct. 27, 2005)). A court must consider the language in question according to its ordinary meaning as reasonably understood by an ordinarily intelligent individual. *Id.* at *3 (citing *Revis v. McClean*, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000)).

Here, there is plainly no question that the Defendant's language, written and spoken, tends to harm Plaintiffs' reputations. He makes allegations of crimes, manipulation, deceit, and other misconduct. There is nowhere in the record any suggestion that Mr. Tyson was engaging in colorful hyperbole or exaggeration. Indeed, his repeated articulation of the same allegations (or variations on the themes) in multiple formats on several occasions suggests that his intention is to be interpreted literally. Accordingly, Plaintiffs are likely to succeed in showing that Defendant's language was defamatory.

      C.      Defendant's statements were made with actual malice

Assuming *arguendo* that Plaintiffs are properly considered public figures, they are held to the standard set out in *New York Times Co. v. Sullivan*, which requires plaintiffs to show a defendant published a statement with "'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Hibdon*, 195 S.W.3d at 58 (quoting *Sullivan*, 376 U.S. at 279–80). "Reckless disregard to the truth means that the defendant 'entertained serious doubts as to the truth'" of the statements. *Finney v. Jefferson*, No. M201900326COAR3CV, 2020 WL 5666698, at *5 (Tenn. Ct. App. Sept. 23, 2020) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989)). "In other words, the

7

defendant must have acted with 'purposeful avoidance of the truth.'" *Id.* (quoting *Harte-Hanks*, 491 U.S. at 692).

The Court need not decide at this juncture whether Plaintiffs are public figures, because even if they are, Defendant's conduct meets the actual malice standard. In the present case, there is no evidence anywhere in the record currently before the Court that *any* of Defendant's statements about the Plaintiffs are actually true. Furthermore, there is no evidence that Defendant sought to investigate the truth of his statements prior to publishing them. Javier Bailey, a member of COGIC leadership who testified at the January 6 Hearing, explained that although he agreed Defendant had a right to complain, he had warned Mr. Tyson to cease these personal attacks on COGIC and its leadership. In fact, toward the end of one of Mr. Tyson's emails, he admits that the allegations may be false, writing, "'IF' anything I said in this attached interview is not correct, PLEASE let me know, so I can correct it." (ECF No. 9-8 at PageID 137.) The Court therefore concludes that Plaintiffs are likely to show that Mr. Tyson *did* publish his statements with actual malice in the form of reckless disregard for the truth.

D.   Plaintiffs can show Defendant's statement caused actual damages

In considering the damages element, courts are to look for "material evidence of reputation and standing in the community, personal humiliation, or mental anguish and suffering." *Hibdon*, 195 S.W.3d at 68 (citation omitted).

At the January 6 Hearing, Bishop Sheard testified that he had seen firsthand and also heard from other COGIC bishops that donations to local churches and the national church had been reduced as a result of the reputational harm caused by Defendant's statements. Mr. Saffold, a licensed attorney in Minnesota, testified that a bar complaint alleging crimes and deceitful conduct had been filed by a parishioner at the Defendant's instigation. Mr. Saffold is also an adjunct

8

professor at the University of Wisconsin, where some of his students have also seen these allegations. In his affidavit, Mr. Saffold also indicated that he had been "questioned . . .concerning the false accusations, resulting in reputational embarrassment," and had "personally observed . . . eroded trust in Church governance, disrupted lines of communication, and [] confusion and discord among congregations." (ECF No. 9-9 at PageID 140.)

Bishop Willie Green testified that he had witnessed church members leave COGIC as a result of Mr. Tyson's statements, with some informing him personally that the allegations against COGIC and Bishop Sheard had caused them to leave. (*See also* ECF No. 9-10 at PageID 143 ([M]embers and visitors . . . will not come back as a result of the statements made by Mr. Tyson.").) According to Bishop Green's testimony, his jurisdiction has seen a drop in donations at the jurisdictional level and in the local churches that is directly linked to the Defendant's statements. (*See also id.* ("[M]embership and income in my local churches and jurisdiction have declined as a result of the [] statements made by Mr. Tyson.").) The Court is therefore satisfied that Plaintiffs have provided sufficient evidence of actual damages to reputation and standing in the community, which in some cases has resulted in a loss of funding.

As such, the Court concludes that Plaintiffs have, at a minimum, "raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Just City*, 758 F. Supp. 3d at 797 (quoting *Husted*, 696 F.3d at 591). Plaintiffs are therefore likely to succeed on the merits of their defamation claim, and the Court accordingly declines to consider the status of their other claims. *See Greene Cnty.*, 717 F. Supp. 3d at 694.

**2.      Plaintiffs Will Suffer Irreparable Harm Absent Preliminary Injunctive Relief**

"A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by money damages." *Mid-Am. Apartment Cmtys., Inc. v. Philipson*, No. 2:23-CV-02186-SHL-CGC, 2024 WL 1178131, at *8 (W.D. Tenn. Mar. 19, 2024) (citing *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)). The Sixth Circuit has said that reputational damage is "precisely the sort[] of injur[y]" that is "difficult to qualify monetarily, and thus constitute[s] irreparable harm." *ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 503–04 (6th Cir. 2022). As discussed above, Plaintiffs have been subject to extensive reputational harm resulting in a loss of both membership and income. *See supra* Discussion Section 1.D. Indeed, given that Defendant's comments are still accessible to the public, particularly the podcast appearances, harm to the Plaintiffs may be ongoing. Plaintiffs have, therefore, shown that they have suffered and will suffer irreparable harm absent a preliminary injunction.

3.  **Balance of the Equities Favors the Plaintiffs**

When a court determines that a plaintiff "has demonstrated it will suffer irreparable harm absent an injunction, it must then balance the equities between the parties." *Interstate S. Packaging, LLC v. Korman*, No. 2:20-CV-207, 2021 WL 5161910, at *23 (E.D. Tenn. Sept. 5, 2021). Here, there is no question that the equities favor the Plaintiffs. Defendant will not be harmed by an injunction directing him to cease the publication of defamatory statements. Furthermore, at the January 6 Hearing, when directly asked by the Court whether Defendant would be harmed by such an injunction, defense counsel conceded that Mr. Tyson would not.

4.  **An Injunction is in the Public Interest**

In general, the public interest is in "protecting First Amendment rights." *Saidak v. Schmidt*, 501 F. Supp. 3d 577, 600 (E.D. Tenn. 2020) (quoting *Thompson v. Hayes*, 748 F. Supp. 2d 824,

10

833 (E.D. Tenn. 2010)). But where speech *has* been found to be defamatory, as here, it is unprotected by the First Amendment. Further, "[t]he public . . . ha[s] a right to be protected from . . . defamation." *Mid-Am. Apartment Cmtys.*, No. 2:23-CV-02186-SHL-CGC, 2024 WL 1178131, at *9 (W.D. Tenn. Mar. 19, 2024). Therefore, the public interest will be served by the issuance of the requested injunction.

5.     **Plaintiffs Need Not Post a Bond**

Pursuant to Federal Rule of Procedure 65, a movant requesting a preliminary injunction must "give[] security in an amount the court considers proper to pay the costs and damages of any party found to have been wrongfully enjoined or restrained." ed. R. Civ. P. 65(c). Though Rule 65 phrases this as a requirement, "the rule in our circuit has long been that [a] district court possesses discretion over whether to require the posting of security." *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013) (quoting *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995)). Because this case was first filed in Shelby County Chancery Court, Plaintiffs were required to post security pursuant to the Tennessee Rules of Civil Procedure and did so in the amount of $2,500. (ECF No. 10 at PageID 146.) Plaintiffs orally moved to have that security released during the January 6 Hearing. Because Plaintiffs have demonstrated a strong likelihood of success on the merits and Defendant will not be harmed by the preliminary injunction, the Court finds that there is good cause to waive the security requirement and release the security already posted.

## CONCLUSION

For the foregoing reasons, the preliminary injunction requested in the Plaintiffs' Emergency Motion to Continue Ex Parte Temporary Restraining Order and Set Hearing for Preliminary Injunction (ECF No. 9) is **GRANTED**.

Accordingly, **IT IS ORDERED** that Defendant Moses Tyson, Jr. is hereby **ENJOINED** from publishing, broadcasting, or disseminating any further defamatory statements regarding the Plaintiffs, including, but not limited to, any references to "thieves," "grand theft," "elder abuse," "fraud," or other similar accusations.  This preliminary injunction shall remain in effect until a judgment is entered in this case unless dissolved sooner by order of this Court.

**IT IS FURTHER ORDERED** that Plaintiffs' $2,500 bond, posted in Shelby County Chancery Court, be released.

**IT IS SO ORDERED**, this 2nd day of February, 2026.

> *s/ Mark S. Norris*
> MARK S. NORRIS
> UNITED STATES DISTRICT JUDGE