## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **CHURCH OF GOD IN CHRIST, INC.,** | § | |
| **individually, and;** | § | |
| **BOARD OF DIRECTORS, also** | § | |
| **known as GENERAL BOARD OF** | § | **Case No.  2:25-cv-03029-MSN** |
| **CHURCH OF GOD IN CHRIST,** | § | |
| **INC., and JONATHAN** | § | |
| **SAFFOLD, JR., individually and** | § | |
| **as General Counsel of Church of** | § | **DEFENDANT TYSON'S MOTION TO** |
| **God in Christ, Inc.,** | § | **ALTER OR AMEND** |
| | § | **PRELIMINARY** |
| *Plaintiffs,* | § | **INJUNCTION PURSUANT TO FED.** |
| | § | **R. CIV. P. 59(e)** |
| v. | § | |
| | § | |
| **MOSES TYSON, JR.** | § | |
| | | |
| *Tyson.* | | |

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................5

STATEMENT OF FACTS .............................................................................6

   A.   Tyson's Role and Authorization by Affected Members to
       Communicate Matters Related to an Ongoing Controversy .............................................7

   B.   The Challenged Statements Arose from Overlapping
       Firsthand Accounts and Supporting Materials ................................................8

LEGAL STANDARD ......................................................................................9

     Application of Rule 59(e)………………………………………….……….....10

  A.  The Affidavits and Documentary Materials Are Newly Discovered
     Evidence.......................................................................................10

  B.  The New Evidence Directly Undermines the Court's Key Factual
     Findings………………………..…………………………………………10
  .
  C.  Failure to Consider New Evidence Would Result in Manifest
     Injustice………………………………………………………………….....11

ARGUMENT..................................................................................................12

  I.  The Preliminary Injunction Is a Classic Prior Restraint
     Subject to the Highest Constitutional Scrutiny ..............................................12

      A.   The Order Restrains Future Speech and Therefore
          Constitutes a Prior Restraint ..................................................................12

      B.   Prior Restraints Carry a Heavy Presumption
          of Unconstitutionality ..........................................................................13

      C.   Courts Must Exercise Independent Constitutional
          Review Before Restricting Speech .......................................................14

      D.   Preliminary Findings Cannot Justify Suppression
          Before Final Adjudication ..................................................................14

II.    The Preliminary Injunction Improperly Resolves a
       Factual Dispute Through Suppression Rather Than Adjudication……………...…….15

III.   Reputational Harm Cannot Support a Speech-Restraining
       Injunction Before Adjudication ....................................................................................17

IV.    The Record Cannot Sustain a Finding of Actual Malice
       Necessary to Support a Speech-Restraining Injunction .............................................19

V.     The Preliminary Injunction Is Impermissibly Overbroad
       and Not Narrowly Tailored .........................................................................................21

VI.    Conclusion and Requested Relief ...............................................................................23

EXHIBIT INDEX ......................................................................................................................25

CERTIFICATE OF SERVICE ..................................................................................................26

# TABLE OF AUTHORITIES

## <u>Cases</u>

*ACT, Inc. v. Worldwide Interactive Network, Inc.* 46 F. 4th 489, 503-04 (6th Cir. 2022)………...18

*Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485 (1984) ...................................9, 13-17

*Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036 (6th Cir. 2001)………………………....…17

*CBS, Inc. v. Young,* 522 F.2d 234 (6th Cir. 1975) ......................................................6, 9, 12-15, 17

*Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004)……………………………………………...……17

*GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804 (6th Cir. 1999*)* .......................................9

*Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657 (1989) .............................11, 19, 21

*Howard v. United States,* 533 F.3d 472 (6th Cir. 2008) ................................................................9

*Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC,* 565 U.S. 171 (2012) ….....23

*International Outdoor, Inc. v. City of Troy,* 974 F.3d 690 (6th Cir. 2020....................13, 15-16, 18

*Ison v. Madison Local Sch. Dist.*, 3 F.4th 887 (6th Cir. 2021)………………………....……17

*Jenkins v. Rock Hill Local School District,* 513 F.3d 580 (6th Cir. 2008) ...…………………19

*McGlone v. Bell*, 681 F.3d 718 (6th Cir. 2012)……………………………………………...17

*Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007)………………………………...……17

*Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990) ...................................................................22

*NAACP v. Claiborne Hardware Co.,* 458 U.S. 886 (1982) .....................................................22-23

*Near v. Minnesota ex rel. Olson,* 283 U.S. 697 (1931) ........................................................6, 12-13

*Nebraska Press Ass'n v. Stuart,* 427 U.S. 539 (1976) ................................6, 9, 11, 13, 15, 18, 21

*Organization for a Better Austin v. Keefe*, 402 U.S. 415 (1971) .....................6, 12, 13, 15-18, 22

*Parks v. City of Columbus*, 395 F.3d 643 (6th Cir. 2005)………………………………………17

*Procter & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219 (6th Cir. 1996) ...............12, 14, 18, 22

*Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696 (1976) ............................................23

*St. Amant v. Thompson,* 390 U.S. 727 (1968) ..................................................................11, 19-20

*Tahfs v. Proctor,* 316 F.3d 584 (6th Cir. 2003) ...........................................................................19

## **Statutes and Rules**

Fed. R. Civ. P. 59(e) ...........................................................................................5, 9-10, 12, 15, 24

**DEFENDANT TYSON'S MOTION TO ALTER OR AMEND
PRELIMINARY INJUNCTION PURSUANT FED. R. CIV. P. 59(e)**

Tyson Moses Tyson, Jr., ("Tyson"), by and through undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 59(e) to alter or amend the Order Granting Plaintiffs' Motion for Preliminary Injunction entered on February 2, 2026 (ECF No. 22, "Order"). In support of this Motion, Tyson submits a supplemented evidentiary record, including sworn testimony and documentary materials not previously before the Court, which bear directly on the constitutional analysis governing speech-restricting injunctions.

As set forth more fully below, the preliminary injunction operates as a prior restraint on speech concerning an ongoing dispute within the Church of God in Christ ("COGIC"). The supplemented record demonstrates that the challenged statements arise from a contested controversy supported by firsthand accounts and documentary materials. In light of these submissions and the constitutional limitations applicable to prior restraints, reconsideration under Rule 59(e) is warranted.

Accordingly, Tyson respectfully requests that the Court vacate the preliminary injunction or, at a minimum, substantially narrow it to avoid restraining protected speech prior to final adjudication.

## <u>INTRODUCTION</u>

The preliminary injunction entered in this case prohibits Tyson from speaking about an ongoing church governance and property dispute prior to final adjudication. Tyson respectfully moves under Federal Rule of Civil Procedure 59(e) to alter or amend that Order in light of this supplemented evidentiary record not previously before the Court.

In granting preliminary relief, the Court evaluated the record presented at the hearing and concluded that Plaintiffs had demonstrated a likelihood of success, including actual malice, and

irreparable harm. The present motion does not dispute that the Court assessed the evidence then submitted. Rather, Tyson now provides sworn testimony, corroborating affidavits, and documentary materials from the individuals whose accounts formed the basis of the challenged statements. This supplemented record demonstrates that Tyson relied on identified firsthand sources and supporting materials in the context of a disputed controversy.

Because the injunction operates as a prior restraint on speech, constitutional principles require scrutiny where the truth of the challenged statements remains contested. *See Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 559 (1976); *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 418–20 (1971); *Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 713–14 (1931); *CBS, Inc. v. Young,* 522 F.2d 234, 238–39 (6th Cir. 1975). Where speech arises from an ongoing factual dispute supported by competing firsthand accounts, suppression before adjudication is constitutionally disfavored.

Accordingly, considering the supplemented record and governing First Amendment principles, the Court should vacate the preliminary injunction or, at minimum, substantially narrow it pending final determination on the merits.

## STATEMENT OF FACTS

This action arises from public statements made by Tyson, a long-standing pastor within COGIC.  Plaintiffs filed the present action in October 2025 because of public statements made by Tyson, alleging that he had "recklessly and knowingly accus[ed] Plaintiffs of severe felonious crimes including grand theft, fraud, and elder abuse." (ECF No. 1, "Notice of Removal" at PageID 9–21.)  Plaintiffs also obtained an ex parte Temporary Restraining Order ("TRO") purporting to restrain Tyson from making any further "defamatory" statements about Plaintiffs and COGIC leadership.  (ECF No. 9, "Emergency Motion" at PAGEID 2.)   On November 10, 2025, Tyson

removed the action to this Court.  (ECF No. 9 at PageID 1–5.)  Because the state-court TRO expired by operation of federal law, the following day, Plaintiffs filed an Emergency Motion to Continue Ex Parte Temporary Restraining Order and Set Hearing for Preliminary Injunction. (ECF No. 9.)

The preliminary injunction hearing was held on January 6, 2026, pursuant to preliminary evidentiary presentation.  (*See* Hr'g Tr., Jan. 6, 2026.)  Following the hearing, this Court issued its order granting the Plaintiffs' motion, ruling that Tyson was prohibited from "publishing, broadcasting or disseminating any *further* defamatory statements regarding the Plaintiffs, including but not limited to, any references to 'thieves,' 'grand theft,' 'elder abuse,' 'fraud,' or other similar accusations."  (ECF No. 22, at PAGEID 12.) The ruling was made on a preliminary evidentiary presentation. (*See* (Hr'g Tr., Jan. 6, 2026.)  The sworn testimony and materials referenced above were not before the Court at that hearing and are now submitted with this motion as part of the supplemented record.

### A. Tyson's Role and Authorization by Affected Members to Communicate Matters Related to An Ongoing Controversy

Tyson did not independently invent accusations against Plaintiffs or rehash secondhand rumor; he spoke as an authorized representative of congregants who had entrusted him with communicating their concerns of illegal property ownership claims, misuse of church leadership authority, and financial misconduct to COGIT officials.  (Tyson Aff., ¶¶ 24–25, Ex. A & Ex. A-4 (authorizing letters).).  Indeed, multiple witnesses stated that Tyson had their express authorization to advocate on their behalf at the time these communications were made:

1. Pastor Kenneth Watts. Sr., of Westside Ministry, confirmed that he authorized Tyson in writing to act as liaison between his congregation and COGIC and to communicate

directly with church leadership regarding ongoing disputes. (Watts Aff., ¶ 14(b), Ex. B & Ex. B-1.)

2. Frankie Lee Huff likewise affirmed that Tyson was "her personal advocate" and had been appointed as "an official representative" of other congregants who were going through similar property ownership disputes or litigation commenced by COGIC. (Huff Aff., ¶ 3, Ex. C.)

3. Felicia Kidd similarly confirmed that Tyson had been engaged by Westside Ministry as "an advisor and representative within COGIC" to assist "with internal resolution of disputes." (Kidd. Aff., ¶¶ 9 –10, 12, Ex. D.)

The Church of God in Christ was aware that Tyson had been authorized to act on their behalf. (Tyson Aff., Ex. ¶¶ 10–11, 24, Ex. A; Kidd. Aff., ¶¶ 9, 22, Ex. D & Ex. D-3 (complaint and filings).)

## B. The Challenged Statements Arose from Overlapping Firsthand Accounts and Supporting Materials

The individuals who provided information to Tyson did not describe isolated grievances. The supplemented record reflects that Tyson's statements arose from accounts provided by multiple pastors and congregants aggrieved by COGIC's litigation over control of local church property, conflicting representations made in court proceedings by COGIC leadership officials, COGIC's attempts to exercise authority over congregations and church assets, and disputes over pastoral status and church governance. *(See* Tyson Aff., ¶¶ 2, 5, 7,10–13, 15, 19, 20–22, Ex. A; Watts Aff., ¶¶ 18, 22–30, 33, 35, 39, 43, 47–49, 52 14(d)–(f), 15, Ex. B; Huff Aff., ¶¶ 3–7, 9–11, 13–16, 17, 21, Ex. C;  Kidd. Aff., ¶¶ 7–10, 18, 2–32, 37–45, 52, 57, Ex. D.)  Their accounts reference the same underlying controversies rather than unrelated or isolated complaints. (*Id.*)

8

Additionally, each of these witnesses further attested to the existence of documentary, audio, video, or public-record materials related to those events. Tyson attested that he possessed and maintained records relating to several incidents involving alleged misappropriation of funds and property by COGIC, including documentation concerning disputed property transfers and unauthorized sales, and that his public statements were made in reliance on that information and evidence. (Tyson Aff., ¶¶ 23–25, Ex. A.)  Watts confirmed Tyson's account, attesting that he had personal knowledge, court records, and internal correspondence substantiating claims of abuses by COGIC.  (Watts Aff., ¶ 7, Ex. B.)  Huff affirmed that she possessed "substantial evidence" supporting her position that COGIC's property ownership claims against her lacked legal basis, including "communications and documentary evidence."  (Huff Aff., ¶¶ 7, 16, Ex. C.)  And Kidd further verified the truth of Tyson's statements, attesting that she possessed "direct documentary evidence" supporting his claims. (Kidd Aff., ¶ 5, Ex. D.)

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 59(e) permits alteration or amendment of an order where (1) newly discovered evidence becomes available, (2) there is an intervening change in controlling law, or (3) reconsideration is necessary to correct clear error or prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Reconsideration is appropriate when the new evidence "could reasonably be expected to change the outcome" of the Court's prior ruling. *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008).

Because the order at issue restrains speech, the Court must also apply the heightened constitutional scrutiny governing prior restraints, which carry a heavy presumption of invalidity. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *CBS, Inc. v. Young*, 522 F.2d 234, 238–39 (6th Cir. 1975). In defamation cases implicating the First Amendment, courts must

independently examine the full record to ensure protected expression is not suppressed. *Bose Corp.*

*v. Consumers Union*, 466 U.S. 485, 499 (1984).

<u>**Application of Rule 59(e)**</u>

**A. The Affidavits and Documentary Materials Are Newly Discovered Evidence**

The affidavits submitted with this motion, Tyson, Watts, Huff, and Kidd, contain material

facts that were not available at the time of the January 6, 2026, preliminary injunction hearing.

Several witnesses were unwilling to provide sworn statements while the dispute remained active

within COGIC and while the state-court TRO was in effect. Others did not have access to their

documents until after the hearing due to ongoing property litigation and internal church

proceedings. These materials were obtained only after the injunction issued and could not, with

reasonable diligence, have been presented earlier.

The new evidence includes:

1. Written authorizations from congregants expressly empowering Tyson to speak on
   their behalf;

2. Contemporaneous documents, internal correspondence, and court filings provided
   to Tyson before he made the challenged statements;

3. Overlapping firsthand accounts from multiple pastors and congregants describing
   the same underlying events;

4. Sworn testimony confirming Tyson possessed and relied on documentary, audio,
   video, and public-record materials before speaking.

None of this evidence was before the Court at the preliminary injunction hearing.

**B. The New Evidence Directly Undermines the Court's Key Factual Findings**

The Court's injunction rested on the conclusion that Tyson acted with reckless disregard for the truth because "there [was] no evidence that Tyson sought to investigate the truth of his statements prior to publishing them." (ECF No. 22 at PageID 8.)

The supplemented record now demonstrates:

    a)  Tyson relied on identified firsthand sources, not rumor;

    b)  Tyson possessed documents and records supporting the statements;

    c)  multiple witnesses corroborate the same events;

    d)  Tyson acted as an authorized representative of affected congregants;

    e)  Tyson had no reason to doubt the accuracy of the information provided to him.

These facts directly contradict the Court's finding that Tyson failed to investigate or acted with serious doubts as to the truth. Under *St. Amant* and *Harte-Hanks*, this new evidence is material to the actual-malice analysis and would have altered the Court's assessment of Plaintiffs' likelihood of success.

**C. Failure to Consider New Evidence Would Result in Manifest Injustice**

The injunction restrains speech on matters of public and ecclesiastical controversy before any adjudication of falsity. Because prior restraints are "the most serious and least tolerable infringement" on First Amendment rights, *Nebraska Press*, 427 U.S. at 559, continued enforcement of an injunction based on an incomplete record constitutes manifest injustice.

The new evidence establishes a genuine factual dispute regarding the truth of the challenged statements. Suppressing speech in the face of such a dispute, particularly where the Court's key factual finding has been materially undermined, would violate the constitutional requirement of independent review and the longstanding rule that allegedly defamatory speech

cannot be enjoined prior to final adjudication. *Keefe*, 402 U.S. at 418–20; *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226–27 (6th Cir. 1996).

Because the supplemented record fundamentally alters the factual and constitutional analysis underlying the preliminary injunction, reconsideration under Rule 59(e) is warranted to prevent manifest injustice.

## **ARGUMENT**

I. **The Preliminary Injunction Is a Classic Prior Restraint Subject to the Highest Constitutional Scrutiny**

A. **The Order Restrains Future Speech and Therefore Constitutes a Prior Restraint**

The preliminary injunction prohibits Tyson from "publishing, broadcasting or disseminating any *further* defamatory statements regarding the Plaintiffs, including but not limited to, any references to 'thieves,' 'grand theft,' 'elder abuse,' 'fraud,' or other similar accusations." (ECF No. 22 at PAGEID 12 (emphasis added)). Because the injunction operates prospectively and forbids future expression rather than imposing liability after adjudication, it constitutes a prior restraint. *See Near,* 283 U.S. at 713–14 (finding a prior restraint where speech is prohibited in advance of a final determination of illegality).

Indeed, the Supreme Court applies this rule even when the speech was alleged to be harmful or defamatory. In *Keefe*, the Court vacated an injunction prohibiting the distribution of allegedly defamatory leaflets, holding that speech may not be restrained prior to adjudication of falsity. 402 U.S. at 418–20. The Sixth Circuit likewise recognizes that injunctions barring allegedly defamatory speech operate as prior restraints because they prohibit expression before factual disputes are resolved through litigation. *See CBS,* 522 F.2d at 238–39.

Because the order prohibits Tyson from speaking in the future rather than imposing liability after adjudication, it must be analyzed under prior-restraint doctrine.

Courts cannot avoid prior-restraint scrutiny by labeling the prohibited speech "defamatory." The Supreme Court has repeatedly held that speech cannot be enjoined as "defamatory" until a court has made a final determination of falsity after full adjudication. *Keefe*, 402 U.S. at 418–20; *Near*, 283 U.S. at 713–14. A preliminary finding of "likely" falsity is not a constitutional substitute for a final adjudication. Because the injunction here prohibits categories of speech based solely on a predictive assessment of falsity, it restrains speech that remains presumptively protected until the truth is resolved at trial.

The injunction's prohibition on "defamatory statements" does not save it from prior-restraint analysis because "defamatory" is not a neutral descriptor; it is a legal conclusion that the Court has not yet reached. Until a jury determines that the challenged statements are false and that actual malice exists, the challenged statements remain protected expression. *Bose Corp.*, 466 U.S. at 499. By prohibiting Tyson from making statements that have not been adjudicated false, the injunction presumes the outcome of the case and suppresses contested speech in advance of trial. This is the hallmark of an unconstitutional prior restraint.

**B. Prior Restraints Carry a Heavy Presumption of Unconstitutionality**

Prior restraints, including the injunctions prohibiting future speech, are "the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press,* 427 U.S. at 559. These speech-restricting injunctions carry a heavy presumption against constitutional validity, reflecting the constitutional preference for adjudication over preemptive expression. *See CBS,* 522 F.2d at 238–39.  The Sixth Circuit accordingly distinguishes between injunctions regulating unlawful conduct and those suppressing protected expression, emphasizing that restraints directed at speech demand heightened scrutiny. *International Outdoor, Inc. v. City of Troy,* 974 F.3d 690, 703–04 (6th Cir. 2020).

13

The injunction here does not regulate conduct; it prohibits speech about ongoing controversy. It therefore falls squarely within the category of speech-restricting injunctions that carry a heavy presumption against constitutional invalidity.

**C.  Courts Must Exercise Independent Constitutional Review Before Restricting Speech**

Moreover, when speech is restrained, courts must independently examine the record to ensure protected speech is not suppressed. *Bose Corp,* 466 U.S. at 499; *New York Times Co*, 376 U.S. at 285 (1964).  This obligation applies with particular force where a court's preliminary findings form the basis for a speech-restricting injunction.  *See Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226–27 (6th Cir. 1996) (orders restricting speech require careful constitutional review, even in pretrial contexts).

Injunctions entered on a preliminary record therefore demand careful constitutional scrutiny, particularly where the truth of the challenged statements remains disputed and the speech arises from competing accounts of an ongoing controversy.  *CBS,* 522 F.2d 234, 238–39.

Because the supplemented record now before the Court bears directly on falsity and actual malice, independent constitutional review is required before continued suppression of Tyson's speech.

**D.   Preliminary Findings Cannot Justify Suppression Before Final Adjudication**

As this Court found, the standard governing preliminary injunctions permits a court to assess whether a plaintiff is likely to succeed on the merits. (*See* ECF No. 22 at PageID 4).  But a predictive assessment is not a final adjudication of falsity.  The prior-restraint doctrine exists precisely to prevent courts from suppressing expression based on preliminary findings rather than proof established through trial.

The Supreme Court has repeatedly emphasized that speech may not be restrained prior to final adjudication, even where it is alleged to be harmful or defamatory. *Nebraska Press,* 427 U.S. at 559; *Keefe*, 402 U.S. at 418–20. The requirement of independent constitutional review further confirms that courts must guard against suppressing protected expression through preliminary determinations. *Bose Corp.*, 466 U.S. at 499.

The Sixth Circuit has likewise vacated speech-restricting injunctions entered on preliminary records, recognizing that disputes over allegedly defamatory speech must be resolved through adjudication, not censorship. *See International Outdoor*, 974 F.3d at 703–04; *CBS*, 522 F.2d at 238–39.

Thus, even accepting this Court's preliminary determination that Plaintiffs demonstrated a likelihood of success on the merits, *see* ECF No. 22 at PageID 4, such a predictive finding does not convert Tyson's contested speech into adjudicated falsity. The supplemental record now reflects sworn testimony and documentary materials supporting the challenged statements, rendering continued enforcement of the injunction constitutionally unsustainable at this preliminary state. Reconsideration under Rule 59(e) is therefore required.

## II.    The Preliminary Injunction Improperly Resolves a Factual Dispute Through Suppression Rather Than Adjudication

Because the injunction restrains speech prior to adjudication, its validity depends on whether the challenged statements have been definitively established as false. In its January 2 Order, this Court found that Tyson acted with reckless disregard for the truth, noting "there [was] no evidence that Tyson sought to investigate the truth of his statements prior to publishing them." (ECF No. 22, at PageID 8.)

The affidavits submitted with this motion demonstrate that Tyson's statements were not isolated assertions but reflected reports from identified pastors and congregants describing

overlapping events and referencing supporting materials. (*See* Exs. A–D.)  The supplemented record includes sworn firsthand accounts and documentary materials directly bearing on the truth of the challenged statements and confirms the existence of a genuine factual controversy.  Multiple witnesses attest to the underlying events and Tyson's reliance on their accounts.  (*See* Tyson Aff., ¶¶ 1–25, Ex. A; Watts Aff., ¶¶ 8-15, 22-27, 35-38, Ex. B (confirming underlying evidence described by Tyson; Huff Aff., ¶¶ 3–7, 9–11, 13–16, 17, 21, Ex. C (describing property ownership dispute and representations made in litigation); Kidd Aff., ¶¶ 7-8, 8-21, 32, 40-52, 60-71, Ex. D (corroborating the events communicated by Tyson and confirming Tyson relayed concerns of affected members).

Thus, because the supplemented record demonstrates that Tyson's statements arise from a genuinely disputed controversy supported by sworn testimony and documentary materials, the First Amendment requires that any determination of falsity occur through adjudication rather than pretrial suppression. *Bose Corp.*, 466 U.S. at 499 (1984); *Keefe*, 402 U.S. at 419; *International Outdoor*, 974 F.3d 690, 703–04.  The preliminary injunction should therefore be vacated, or at minimum suspended, pending final resolution of the truth of the challenged statements.

The supplemented record does more than create a factual dispute; it directly contradicts the factual premises on which the injunction was issued. The Court found that Tyson "failed to investigate" and relied on "no evidence" before making the challenged statements. (ECF No. 22 at PageID 8.) The new affidavits show the opposite: Tyson received information from multiple firsthand witnesses, reviewed documents they provided, possessed records relating to property disputes and financial concerns, and acted pursuant to express authorization from affected congregants. These facts undermine the Court's preliminary finding of reckless disregard and demonstrate that the truth of the statements cannot be resolved without full adjudication.

Where competing sworn accounts exist, the First Amendment prohibits courts from resolving factual disputes by restraining speech. The Supreme Court has made clear that courts may not "freeze" one side of a controversy while the underlying facts remain contested. *Keefe*, 402 U.S. at 419–20. The Sixth Circuit likewise holds that factual disputes over allegedly defamatory speech must be resolved through trial, not through pretrial censorship. *CBS*, 522 F.2d at 238–39. Because the supplemented record establishes a live factual controversy supported by sworn testimony and documentary materials, continued enforcement of the injunction would impermissibly convert a preliminary prediction into a final determination of falsity.

## III.    Reputational Harm Cannot Support a Speech-Restraining Injunction Before Adjudication

The Court found that Tyson's statements subjected Plaintiffs to irreparable harm in the form of reputational injury, noting that injunctive relief was warranted because reputational injury was difficult to quantify monetarily. (ECF No. 22 at 9-10.) However, the Sixth Circuit has consistently found that speech cannot be suppressed merely because it is offensive, disparaging, or reputationally damaging. *See Ison v. Madison Local Sch. Dist.*, 3 F.4th 887 (6th Cir. 2021) (government cannot prohibit speech because it is insulting); *McGlone v. Bell*, 681 F.3d 718, 735 (6th Cir. 2012) (speech cannot be restricted because it causes discomfort); *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) (protecting insulting criticism); *Parks v. City of Columbus*, 395 F.3d 643, 648 (6th Cir. 2005) (protecting disturbing speech). This protection is at its apex where speech alleges misconduct or abuse of authority. *Farhat v. Jopke*, 370 F.3d 580, 589 (6th Cir. 2004); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1050 (6th Cir. 2001).

Further, the supplemented record demonstrates a genuine dispute regarding the truth of the challenged statements. The First Amendment does not permit the controversy to be resolved through pretrial suppression of speech but instead through damages after adjudication. *Bose Corp.*

17

466 U.S. at 499; *International Outdoor,* 974 F.3d at 703; *Procter & Gamble.,* 78 F.3d at 226–27. Where the truth of the challenged speech remains disputed, reputational injury is the very harm the law addresses through post-adjudication relief, not pretrial suppression. *See Keefe*, 402 U.S. at 418–20. Allowing allegations of reputational injury alone to justify a speech-restricting injunction would invert the constitutional preference for adjudication over censorship and effectively permit suppression whenever speech is contested.

The Court's reliance on *ACT, Inc. v. Worldwide Interactive Network* cannot support a speech-restricting injunction. *ACT* involved ongoing commercial misconduct, not expressive activity, and the Sixth Circuit expressly distinguished injunctions regulating conduct from those suppressing speech. 46 F.4th at 503–04. When an injunction targets speech, traditional equitable principles yield to the First Amendment, and courts may not rely on generalized notions of reputational harm to justify prior restraints. *International Outdoor*, 974 F.3d at 703. Because the injunction here restricts expression rather than conduct, *ACT* provides no basis for finding irreparable harm.

Even if Plaintiffs could show reputational injury, such harm cannot constitutionally justify suppressing speech whose truth remains disputed. The Supreme Court has repeatedly held that reputational harm is addressed through damages after adjudication, not through pretrial censorship. *Keefe*, 402 U.S. at 418–20; *Nebraska Press*, 427 U.S. at 559. Allowing allegations of reputational injury to support a prior restraint would permit suppression whenever speech is contested, collapsing the distinction between protected and unprotected expression and nullifying the constitutional preference for adjudication over censorship. Because the supplemented record establishes a genuine factual dispute, reputational harm cannot sustain continued enforcement of the injunction.

Because the alleged injury arises from speech whose truth has not been finally adjudicated, and is now supported by competing sworn accounts, irreparable harm cannot constitutionally justify continued enforcement of the injunction.

## IV.    The Record Cannot Sustain a Finding of Actual Malice Necessary to Support a Speech-Restraining Injunction

This Court held that Tyson acted with actual malice in the form or reckless disregard for the truth, finding that he failed "to investigate the truth of his statements prior to publishing them." (ECF No. 22 at 8).  However, the failure to investigate does not establish actual malice. *Tahfs v. Proctor*, 316 F.3d 584, 596 (6th Cir. 2003). Additionally, actual malice requires proof that Tyson subjectively doubted the truth of his statements, not merely that the statements were disputed. *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968); *Jenkins v. Rock Hill Local School District,* 513 F.3d 580, 589 (6th Cir. 2008). A speaker who relies on identifiable firsthand sources and documentation cannot be said to have entertained serious doubts about the truth absent obvious reasons to distrust those sources. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989); *Tahfs,* 316 F.3d at 596 (6th Cir. 2003).

The supplemented record materially alters the basis for the Court's preliminary finding of reckless disregard. The affidavits now before the Court demonstrate that Tyson did not publish unverified accusations, but relied on identified participants, documentary materials, litigation records, and audiovisual evidence before making the challenged statements. (Tyson Aff., ¶¶ 2, 5, 7, 10–13, 15, 19, 20–22, Ex. A.)

Furthermore, Tyson attested that he was not acting independently but on behalf of individuals who had explicitly authorized him to communicate their concerns. (Id. ¶¶ 24–25 & Ex. A-4 (authorizing letters).) He also stated that he possessed and maintained records related to several incidents involving alleged misappropriation of funds and property by COGIC, including

documentation concerning disputed property transfers and unauthorized sales. (Id. ¶ 25.) He mentioned that his public statements were made based on that information and evidence. (Id. ¶ 24.)

Pastor Watts confirmed that, as liaison between affected members and church leadership, Tyson received information directly from participants and records they provided. (Watts Aff. ¶ 14(b), Ex. B, & Ex. B-1.) Similarly, Huff attested Tyson advocated for congregants during disputes regarding ownership of privately held church property and corroborated the events Tyson described, including litigation pursued by COGIC concerning ownership claims. (Huff Aff., ¶¶ 3, 7, 16, Ex. C.) Kidd likewise affirmed that her observations and documentation substantiated Tyson's statements and that she possessed public records and direct evidence relating to the matters he discussed. (Kidd Aff., ¶ 5, Ex. D.)

Tyson's reliance on firsthand accounts and documentary evidence is incompatible with this Court's finding of reckless disregard for the truth. *St. Amant*, 390 U.S. at 731–32 (reckless disregard requires evidence that the defendant entertained serious doubts as to the truth of the publication). At minimum, the supplemented record establishes a genuine dispute concerning truth or falsity, which precludes a definitive finding of actual malice at the preliminary injunction stage. The Court should therefore reconsider its preliminary actual-malice determination and vacate or substantially narrow the injunction.

The supplemented record eliminates any basis for finding that Tyson subjectively doubted the truth of the challenged statements. Actual malice requires proof that the speaker "in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731. The affidavits show that Tyson received consistent accounts from multiple firsthand witnesses, reviewed documents they provided, and possessed records relating to the underlying disputes

before speaking. A speaker who relies on corroborated firsthand information and contemporaneous documentation cannot, as a matter of constitutional law, be said to have harbored serious doubts about the truth of the statements.

Nor does the fact that the statements involved allegations of serious misconduct convert them into actual malice. The Supreme Court has rejected the notion that the gravity of an accusation establishes reckless disregard. *Harte-Hanks*, 491 U.S. at 688. Where a speaker relies on identified sources who personally experienced or documented the events at issue, the seriousness of the allegation does not create a presumption of subjective doubt. The supplemented record shows that Tyson believed the information provided to him by congregants, pastors, and individuals directly involved in the disputes, and nothing in the record suggests he had any reason to distrust those sources.

The fact that Tyson acted pursuant to express authorization from affected congregants further undermines any inference of actual malice. While authorization does not immunize speech, it is powerful evidence that Tyson understood himself to be conveying the concerns of individuals who personally experienced the events and who entrusted him to communicate those concerns to church leadership and the public. Acting as a designated representative of individuals who provided firsthand accounts and supporting materials is inconsistent with the notion that Tyson knowingly or recklessly disseminated falsehoods.

## V.    The Preliminary Injunction Is Impermissibly Overbroad and Not Narrowly Tailored

Even where some restriction on speech might be permissible, the First Amendment requires any injunction to be narrowly tailored to prohibit only specific statements adjudicated false. A court may not prohibit categories of expression or broad subject matters because doing so risks suppressing protected speech along with unprotected speech. *See Nebraska Press,* 427 U.S. at 562

21

(1976) (prior restraints must be narrowly drawn); *Procter & Gamble,* 78 at F.3d at 226–27 (injunctions restricting speech must be precisely limited because broad restraints chill protected expression and operate as unconstitutional prior restraints).

The injunction here prohibits Tyson from "publishing, broadcasting, or disseminating any further defamatory statements regarding Plaintiffs, including, but not limited to, any references to 'thieves,' 'grand theft,' 'elder abuse,' 'fraud,' or other similar accusations." (ECF No. 22 at PageID 12). This language does not limit the restraint to specific adjudicated statements, but rather, bars entire categories of speech and undefined "similar accusations." Speech concerning misconduct, financial disputes, or governance conflicts may include protected opinion, rhetorical hyperbole, or statements later proven true. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (statements that cannot reasonably be interpreted as stating actual facts are protected); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908–09 (1982) (speech in public controversies may include "emotionally charged rhetoric" and cannot be punished merely because it is harsh or accusatory). An order prohibiting undefined "similar accusations" is unconstitutionally vague, overbroad, leaving the uncertain about what speech is prohibited and inviting self-censorship.

The injunction is also impermissibly vague because it prohibits Tyson from making "similar accusations" without defining the scope of that category. A speaker cannot be required to guess which statements a court may later deem "similar" to the prohibited terms. Vague speech restrictions are unconstitutional because they chill lawful expression and force speakers to self-censor out of fear of contempt. *Milkovich*, 497 U.S. at 20; *Keefe*, 402 U.S. at 419. By prohibiting undefined categories of speech, the injunction fails to meet the narrow specificity requirement and sweeps far beyond any adjudicated statements.

The injunction's breadth is especially problematic because it suppresses speech on matters of church governance, leadership authority, and property disputes; topics that lie at the intersection of the First Amendment's Free Speech and Free Exercise protections. Speech addressing alleged misconduct by religious leaders, internal governance disputes, and the handling of church assets is protected commentary on matters of public and ecclesiastical concern. *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 708–10 (1976); *NAACP v. Claiborne Hardware*, 458 U.S. at 913–15. An injunction that bars Tyson from discussing these issues, even in general terms, is not narrowly tailored; it suppresses an entire category of protected expression at the heart of the First Amendment.

Further, this Court's order, as it stands, extends beyond preventing specific false statements and instead prevents Tyson from discussing the underlying controversy itself, which centers on church governance and disputes among clergy and congregants. Civil courts must avoid resolving ecclesiastical controversies or restricting discussion of them, because such intervention risks entanglement with matters of church administration and discipline. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188–89 (2012); *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709–10 (1976).   An injunction prohibiting accusations regarding church finances, leadership authority, or the removal of pastors, therefore, suppresses participation in a religious controversy itself, not merely defamatory statements, thereby amplifying First Amendment concerns.

Accordingly, even if some relief were appropriate, the injunction must be vacated or, at minimum, narrowed to specific statements determined to be false only after final adjudication. The present order's sweeping prohibition on categories of speech renders it constitutionally overbroad.

## VI.    Conclusion and Requested Relief

For the foregoing reasons, the preliminary injunction restrains speech prior to adjudication, rests on disputed facts, and cannot be sustained under governing First Amendment principles. The supplemented record demonstrates that the challenged statements arise from a contested controversy supported by competing accounts and documentary materials and therefore may not be resolved through pretrial suppression. Continued enforcement of the injunction would suppress protected expression based on preliminary findings that have now been materially undermined.

Accordingly, Tyson respectfully requests that this Court grant his Motion to Alter or Amend pursuant to Fed. R. Civ. P. 59(e) and alter or amend its February 2, 2026, Order as follows:

1. Vacate the preliminary injunction in its entirety;

2. Or, in the alternative, narrowly tailor the injunction to specific statements adjudicated false after full evidentiary development;

3. Or, at minimum, suspend enforcement of the injunction pending final adjudication to avoid suppressing contested speech.

Tyson further requests such additional relief as the Court deems just and proper.

Respectfully Submitted,
**LLG NATIONAL LAW GROUP**

Dated: March 2, 2026

*/s/Robert Felts, Esquire*
70 N. Ocoee Street
Cleveland, TN 37311
(t)  423-322-9887
(e) rfelts13@gmail.com
*Attorney for Moses Tyson, Jr.*

**LLG NATIONAL LAW GROUP**

Dated: March 2, 2026

*/s/Robert Mactavish, Esquire*
Robert Mactavish, Esquire (Admission Pending)
1200 Brickell Avenue - Suite 1950
Miami, FL 33131
(t) (888) 363-0011
(e) Robert.Mactavish@LLGNational.com
*Attorney for Moses Tyson, Jr.*

# EXHIBIT INDEX

**APPENDIX OF EXHIBITS IN SUPPORT OF TYSON'S MOTION TO ALTER OR AMEND PRELIMINARY INJUNCTION PURSUANT TO FED. R. CIV. P. 59(e)**

Tyson submits the following exhibits in support of this motion:

| Exhibit | Description |
|---|---|
| Exhibit A | Affidavit of Moses Tyson, Jr. |
| Exhibit B | Affidavit of Pastor Kenneth W. Watts, Sr. |
| Exhibit C | Affidavit of Frankie Lee Huff |
| Exhibit D | Affidavit of Felicia Kidd |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 2, 2026, I electronically filed the foregoing Tyson's Defendant's Motion to Alter or Amend Preliminary Injunction Pursuant to Fed. R. Civ. P. 59(e) with the Clerk of this Court using the Court's CM/ECF system, which will send notice of filing to all counsel of record. A copy was also served via electronic mail upon all parties.

Dated: March 2, 2026                    _/s/Robert Felts, Esquire_
                                        Robert Felts, Esquire