## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE WESTERN DIVISION

_____

**CHURCH OF GOD IN CHRIST, INC.**
**individually, and;**

**BOARD OF DIRECTORS also known as**
**GENERAL BOARD OF CHURCH OF**
**GOD IN CHRIST, INC.**

**JONATHAN SAFFOLD, JR., individually and as**
**GENERAL COUNSEL OF CHURCH OF**
**GOD IN CHRIST, INC.**

**Plaintiffs,**

**vs.**                                                    **No:    No:  2:25-cv-03029-MSN**

**MOSES TYSON, JR.**

**Defendant.**

---

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO ALTER OR AMEND PRELIMINARY INJUNCTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e)

---

Comes now Plaintiffs, by and through undersigned counsel, would file their Response in Opposition to Defendant's Motion to Alter or Amend Preliminary Injunction Pursuant to Federal Rule of Civil Procedure 59(e), and in support would state as follows:

### INTRODUCTION

Defendant Moses Tyson Jr.'s Motion to Alter or Amend the Court's Preliminary Injunction should be denied for three independent reasons. First, Defendant identifies no intervening change in controlling law, newly discovered evidence, or clear error—each of which is required for relief under Federal Rule of Civil Procedure 59(e). Second, the motion improperly attempts to reopen the record with affidavits that were plainly available before the preliminary injunction hearing but

1

were never presented to the Court. Third, even if considered, Defendant's new submissions do not undermine the Court's findings that Defendant repeatedly published likely false accusations of criminal conduct that caused ongoing reputational harm to Plaintiffs.

## LEGAL ARGUMENT

I.    **DEFENDANT'S MOTION IS PROCEDURALLY IMPROPER AND FAILS TO SATISFY THE STRICT STANDARD GOVERNING RULE 59(E) RELIEF.**

Defendant's motion fails at the threshold because it does not satisfy the narrow circumstances under which reconsideration is permitted. Rule 59(e) states that a party may file a motion to alter or amend judgment within twenty-eight days from the entry of judgment. See Fed. R. Civ. P. 59(e). Rule 59(e) permits the Court to alter or amend a judgment based on "(1) a clear error in law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv*., 616 F.3d 612, 615 (6th Cir. 2010) (quotation omitted). The Court has "considerable discretion" in deciding whether to grant a Rule 59(e) motion. *Id*. (citation omitted). A Rule 59(e) motion, however, "run[s] contrary" to notions of "finality and repose," and it is therefore "generally discouraged" and "afford[s] relief only under extraordinary circumstances." *Polzin v. Barna & Co*., No. 3:07-cv-127, 2007 WL 4365760, at *3 (E.D. Tenn. Dec. 11, 2007). Defendant argues that review under Rule 59(e) is proper because he claims to have newly discovered evidence, and to prevent manifest injustice. Defendant's arguments are both erroneous.

### A.    <u>Defendant's Affidavits Do Not Constitute "Newly Discovered Evidence"</u>

Defendant primarily contends he entitled to relief under Federal Civil Rule 59(e) based on "newly discovered evidence." The "new" evidence upon which Defendant relies are affidavits from several individuals which included Pastor Kenneth Watts Sr., associated with Westside Ministry, who allegedly authorized Tyson in writing to serve as a liaison between the congregation

and COGIC leadership in connection with disputes regarding church property and governance;
Frankie Lee Huff who reportedly designated Tyson as her personal advocate and representative in
disputes involving COGIC; and, Felicia Kidd who similarly affirmed that Tyson acted as an
advisor and representative assisting congregants in resolving conflicts with church leadership.

"[T]he newly discovered evidence must have been previously unavailable[.]"  *Arsan v.
Keller*, 784 F. App'x 900, 918 (6th Cir. 2019) (internal citations omitted); *HDC, LLC v. City of
Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (holding plaintiff's evidence was not newly
discovered because it was publicly available prior to the district court's judgment); *GenCorp, Inc.
v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (Rule 59(e) requires evidence to have
been "previously unavailable"); see also 11 Charles Alan Wright, Arthur R. Miller, & Mary Kay
Kane, Fed. Prac. & Proc. Civ. § 2859 (3d ed. 2023) ("[I]f [the evidence] was in the possession of
the party before the judgment was rendered it is not newly discovered and does not entitle the party
to relief.").

Defendant has failed to establish the proposed evidence is new.  The evidence Defendant
seeks to rely on here is simply not "newly discovered" as required by Rule 59(e), and the Court
should reject Defendant's argument that he somehow could not have presented this evidence
earlier.

1.    **The Affidavit of Pastor Kenneth Watts Sr**.

At the outset of the affidavit, Pastor Watts expressly states that the statements contained
therein are based upon his "personal knowledge … based upon firsthand experiences with the
Church of God in Christ (COGIC), documents sent to me and/or my ministry, and held within the
court record of the First Judicial Circuit Court in and for Escambia County Florida." See Watts
Aff. ¶ 4. This declaration demonstrates that the information relied upon by the affiant was either

3

personally known to him or contained in documents already in his possession or within public court records. Nothing in this statement suggests that the information was newly discovered after the preliminary injunction hearing or that it could not have been obtained earlier with reasonable diligence.

The affidavit further confirms that Pastor Watts has been personally involved in the events described for many years. Watts states that he has served as pastor of Westside Ministry for over twenty-five years and that his statements arise from his personal experiences with COGIC leadership and litigation involving his church. Watts Aff. ¶ 5. Because the affiant claims personal knowledge of the events and the underlying litigation history, the affidavit itself demonstrates that the information was available to Defendant well before the January 6 preliminary injunction hearing. Similarly, the affidavit states that Pastor Moses Tyson Jr. has been acting as a liaison between Watts and COGIC leadership "since late 2021." Watts Aff. ¶ 14(b). This admission directly contradicts any suggestion that the relationship between Watts and Tyson—or Watts's knowledge of Tyson's involvement—was recently discovered. If Tyson had been serving in this role for years, the information contained in the affidavit was plainly available prior to the hearing.

The affidavit also references documentary materials and court records that allegedly support Watts's assertions. Watts states that the matters described are substantiated by "public records and direct evidence in our possession," including court transcripts and internal COGIC correspondence. Watts Aff. ¶¶ 4, 14(c). These statements confirm that the underlying materials were already available to the affiant and his ministry, and evidence already in a witness's possession or contained in public records cannot constitute newly discovered evidence. The affidavit further describes events related to litigation occurring between September 2021 and August 2024, including property disputes, church communications, and statements made during

4

court proceedings. See Watts Aff. ¶¶ 15–16, 19, 25, 42. Because these events occurred years before
the preliminary injunction hearing, the affidavit demonstrates that the underlying facts were long
known and therefore provides no basis for reconsideration under Rule 59(e).

### 2.    The Affidavit of Frankie Lee Huff.

A review of the Affidavit of Frankie Lee Huff likewise reveals no statements suggesting
that the information contained in the affidavit constitutes newly discovered evidence that could
not have been obtained prior to the preliminary injunction hearing. The affidavit demonstrates that
the relevant events described therein occurred years before the preliminary injunction proceedings
in this case. Mrs. Huff states that the disputes underlying her affidavit began "in September 2021,"
when Bishop Willie C. Green allegedly began filing lawsuits involving the parties and church
property. Huff Aff. ¶ 4. Because these events allegedly began more than four years before the
filing of the Rule 59(e) motion and several years before the January 2026 injunction hearing, the
affidavit confirms that the underlying facts were long known to the affiant.

Similarly, the affidavit states that Pastor Moses Tyson Jr. had been acting as an advocate
and representative for Mrs. Huff and her family in connection with the church dispute well before
the present litigation. Huff Aff. ¶ 3. This admission demonstrates that the affiant's knowledge
regarding Tyson's involvement and the surrounding events existed well before the preliminary
injunction proceedings and therefore cannot constitute newly discovered evidence. The affidavit
also references documents and communications the affiant claims to possess that allegedly support
her assertions. Mrs. Huff states that she possesses communications and documentary evidence
showing that COGIC leadership was aware of the alleged lack of ownership claims regarding the
property at issue. Huff Aff. ¶ 7. Because the affidavit confirms that these materials were already
in the affiant's possession, they cannot plausibly be characterized as newly discovered evidence.

The affidavit further describes events occurring between 2021 and 2025, including Florida state court litigation, communications with church leadership, and disputes concerning property ownership and legal proceedings. See Huff Aff. ¶¶ 4–11, 13–15. These paragraphs recount historical events and prior litigation that predate the preliminary injunction hearing by several years. Finally, the affidavit makes clear that it primarily presents the affiant's personal account and opinions regarding the conduct of COGIC leadership and related litigation. Huff Aff. ¶¶ 16–21. Such narrative statements do not constitute newly discovered facts or demonstrate that the information could not have been presented during the preliminary injunction proceedings..

      3.      **The Affidavit of Felicia Kidd.**

A review of the Affidavit of Felicia L. Kidd, Ed.D. reveals no statements indicating that the information contained in the affidavit constitutes newly discovered evidence that could not have been obtained prior to the preliminary injunction hearing. First, the affidavit expressly states that Dr. Kidd has been involved in the dispute between Westside Ministry and the Church of God in Christ since 2021. Kidd Aff. ¶¶ 2, 4. This admission establishes that the factual basis for her testimony predates the litigation events leading to the preliminary injunction and therefore cannot constitute newly discovered evidence.

Second, the affidavit repeatedly indicates that the information relied upon consists of documents, communications, and events that have long been in the possession of the affiant or other participants. Dr. Kidd states that she has reviewed and possesses "relevant pleadings, affidavits, internal church communications, audio recordings, and video evidence related to this matter," including materials associated with prior court proceedings. Kidd Aff. ¶¶ 6, 9. The affidavit does not suggest that these materials were recently uncovered or previously unavailable;

rather, it confirms that they were already in her possession or available to her through the prior litigation.

Third, the narrative throughout the affidavit describes a chronological history of events occurring between 2021 and 2024, including the filing of lawsuits, mediation efforts, communications with church leadership, and actions taken during the Escambia County litigation. Numerous paragraphs recount events that occurred in 2021, 2022, and 2024 and describe the affiant's participation in those events. Kidd Aff. ¶¶ 21, 25, 27–30, 63. Because these events were contemporaneously known to the affiant and other participants, the affidavit itself confirms that the information could have been presented earlier through testimony or documentary evidence.

Finally, several paragraphs explicitly acknowledge that the affiant has long possessed the evidence referenced in the affidavit, including audio and video recordings, court filings, and internal church records. Kidd Aff. ¶¶ 9, 41, 51, 53. The affidavit does not claim that these materials were recently discovered, newly produced, or previously unavailable despite diligent investigation. Instead, the affiant repeatedly asserts that she already had these materials in her possession.

### 4.    **Defendant's Affidavit**.

The affidavit contains no assertion that these statements or the evidence supporting them were recently discovered or previously unavailable. Several paragraphs confirm that the defendant's allegations relate to events that occurred years before the present litigation. For example, the affiant states that in 2017 national church officials engaged him in bringing Bishop Rufus Kyles before the Board of Bishops to resolve an ongoing matter. Tyson Aff. ¶ 10. He further alleges that after Bishop Kyles cooperated in that process, church officials engaged in fraudulent conduct relating to Bishop Kyles's leadership position and finances. Tyson Aff. ¶¶ 11–12. Because

these events allegedly occurred years earlier, the affidavit itself demonstrates that the underlying information was known to the affiant long before the preliminary injunction hearing.

Similarly, other allegations reference events occurring between approximately 2018 and 2020. The affiant alleges that church officials created a fraudulent letter after Bishop Kyles was reinstated by the Board of Bishops in 2020. Tyson Aff. ¶ 17. He also references written evidence from 2018 confirming Bishop Kyles's pastoral status. Tyson Aff. ¶ 19. These historical references further indicate that the factual basis for the affidavit predates the present litigation and therefore could have been presented earlier.

The affidavit also indicates that the defendant already possesses the supporting materials he references. The affiant states that he has video, documented, and audio evidence supporting the allegations contained in the affidavit. Tyson Aff. ¶ 23. He further states that he has maintained records of these incidents. Tyson Aff. ¶ 25. The affidavit does not state that these materials were recently obtained or discovered after the preliminary injunction hearing. To the contrary, the statement that he has maintained records suggests that the evidence has been in his possession for some time.

## B.    Defendant's "Manifest Injustice" Argument Fails.

"[T]he standard for manifest injustice is high: Essentially, a petitioner relying on this ground in a Rule 59(e) motion must show that there exists a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *Farinash v. Henry* (*In re River City Resort, Inc*.), Nos. 1:14-bk-10745-SDR, 1:18-ap-01044-SDR, 2022 Bankr. LEXIS 1844, at *15-16 (Bankr. E.D. Tenn. July 5, 2022) (citation omitted). "Reiterating arguments previously raised and merely claiming that the Court misinterpreted the applicable facts and law does not suffice to show manifest injustice." *Id*.

Defendant's motion largely repeats arguments the Court has already considered and rejected. Rule 59(e) cannot be used to relitigate matters previously resolved. *Sault Ste. Marie Tribe v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). After reviewing the evidence presented at the hearing, the Court made several specific findings supporting the issuance of the preliminary injunction. The Court determined that Defendant published statements accusing Plaintiffs of criminal conduct and that those statements were reasonably understood as factual assertions rather than rhetorical opinion. Based on the record before it, the Court further concluded that Plaintiffs demonstrated a likelihood of success on the merits of their defamation claim and that Defendant acted with reckless disregard for the truth in publishing the statements at issue. The Court also found that Plaintiffs suffered ongoing reputational harm as a result of the publications, including declining membership and donations.

Defendant's present motion does not identify any legal error in those findings. Instead, the motion attempts to introduce a competing narrative concerning internal disputes within the Church of God in Christ. That narrative does not undermine the Court's prior determinations. The issue before the Court at the preliminary injunction hearing was not whether internal disagreements exist within COGIC, but whether Defendant repeatedly published accusations that Plaintiffs committed crimes. Based on the evidence presented, the Court has already determined that Plaintiffs are likely to succeed in proving that those accusations are false and defamatory.

Rule 59(e) does not permit Defendant to relitigate those determinations or present a new factual narrative that could have been raised earlier. Because Defendant's motion fails to identify any manifest error of law or fact in the Court's findings and instead seeks to revisit issues already decided, it provides no basis for altering or amending the Court's prior ruling.

## II.    DEFENDANT'S ARGUMENTS SHOULD HAVE BEEN RAISED BEFORE THE INJUNCTION WAS ENTERED.

Notwithstanding the procedural deficiencies in Defendant's Rule 59(e) motion, his legal arguments going to the merits of the case are also improper both legally and procedurally.

## A.  <u>Defendant Could Have Previously Raised His Arguments</u>.

A party "cannot use a Rule 59 motion ... 'to raise arguments which could, and should, have been made before judgment issued.' " *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir.2010) (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998)). "Indeed, this court has long held that '[a] Rule 59(e) motion ... is not the proper vehicle to raise arguments that should have been made before judgment.' " *Moore v. Coffee Cnty.*, TN, 402 F. App'x 107, 109 (6th Cir.2010) (alterations in original) (quoting *Russell v. GTE Gov't Sys. Corp.*, 141 F. App'x 429, 434 (6th Cir.2005)) (stating that the plaintiff cited no authority that could support a finding of "manifest injustice under Rule 59(e) when the movant neglected to raise the issue before" the court entered judgment).

Based on the arguments raised in Defendant's motion, those constitutional and factual arguments should have been raised in a response to Plaintiffs' motion for a preliminary injunction rather than for the first time in a post-judgment motion. The motion challenges the injunction as an unconstitutional prior restraint, disputes the Court's findings regarding falsity and actual malice, contests the sufficiency of the evidence of irreparable harm, and argues that the Court improperly resolved factual disputes concerning internal church controversies. Each of those arguments directly addresses the legal standards governing the issuance of a preliminary injunction and therefore could have been presented when the motion was originally litigated. Indeed, the issues of prior restraint, likelihood of success on the merits, actual malice, and irreparable harm are central components of the preliminary-injunction analysis itself. Defendant had a full opportunity to raise those arguments in opposition to the motion but elected not to file a response or present

10

evidence at the hearing. Because Defendant's present motion advances legal theories and evidentiary arguments that were plainly available at the time of the injunction proceedings, those arguments are procedurally improper under Rule 59(e) and provide no basis for altering or amending the Court's ruling.

Further, Defendant did not file anything in response to Plaintiffs' Motion for Preliminary Injunction. As such, even if the Court considers the motion on its merits, Defendant's position is severely undermined by his own failure to oppose the preliminary injunction in the first instance. Local Rule 7.2(a)(2) provides that failure to respond to a motion may be deemed grounds for granting that motion. Nevertheless, the Court did not rely solely on Defendant's failure to respond. Instead, it conducted a full evidentiary hearing and issued a detailed written order addressing each of the factors governing preliminary injunctive relief. Having elected not to present evidence or challenge Plaintiffs' proof when the issue was originally litigated, Defendant cannot now invoke Rule 59(e) to obtain a second opportunity to contest the injunction.

### B.    The Order Only Restrains Future Defamatory Speech and Therefore Does Not Constitutes a Prior Restraint.

Defendant argues that the preliminary injunction constitutes an unconstitutional prior restraint because it prospectively prohibits him from making certain statements about Plaintiffs before those statements have been finally adjudicated false. He contends that courts generally may not restrain allegedly defamatory speech prior to a final determination of falsity and actual malice at trial. According to Defendant, the injunction improperly suppresses speech about an ongoing church controversy based only on a preliminary finding that Plaintiffs are likely to succeed on the merits, which he argues is insufficient under prior-restraint doctrine. He further asserts that prior restraints carry a strong presumption of unconstitutionality and require independent constitutional

review, and therefore the injunction should be reconsidered or vacated until the truth of the challenged statements is resolved through full adjudication.

In the present matter, Plaintiffs have requested that the Court issue a preliminary injunction preventing Defendant from making certain statements, which implicates the First Amendment. Because the Court must consider the rights under the First Amendment, "the factors for granting a preliminary injunction essentially collapse into a determination of whether restrictions on First Amendment rights are justified to protect competing constitutional rights." *Thompson v. Hayes*, 748 F. Supp. 2d 824, 831 (E.D. Tenn. 2010) (quoting *Cnty. Sec. Agency v. The Ohio Dep't of Com.*, 296 F.3d 477, 485 (6th Cir. 2002)). As the Sixth Circuit has explained, when considering a preliminary injunction "[i]n a case of a prior restraint on pure speech, the hurdle is substantially higher: a publication must threaten an interest more fundamental that the First Amendment itself." *Cnty. Sec. Agency*, 296 F.3d at 485 (quoting *Procter & Gamble Co. v. Bankers Trust Co*., 78 F.3d 219, 226–27 (6th Cir. 1996)). Further, the Sixth Circuit has explained that in such cases "the standard of review is different." *Id*. (quoting *Procter & Gamble Co*., 78 F.3d at 227).

"'Any system of prior restraints of expression [bears] a heavy presumption against its constitutional validity,' and a party who seeks to have such a restraint upheld 'thus carries a heavy burden of showing justification for the imposition of such a restraint.' " *Id*. (quoting *New York Times Co. v. United States*, 403 U.S. 713, 714, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (per curiam) (citations omitted)). "A prior restraint is permissible if the restrained speech poses 'a grave threat to a critical government interest or to a constitutional right.' " *Id*. (quoting *Procter & Gamble*, 78 F.3d 225, 227).

Defendant's characterization of the injunction as a blanket prior restraint ignores the procedural posture in which the injunction was issued. The Court did not enter the injunction in

the absence of a factual record. Rather, the Court conducted an evidentiary hearing, reviewed sworn testimony and documentary evidence, and issued detailed findings that Defendant published statements accusing Plaintiffs of serious crimes, that the statements were reasonably understood as factual allegations rather than opinion, that Plaintiffs demonstrated a likelihood of success on their defamation claim, and that Defendant acted with reckless disregard for the truth. Injunctive relief entered after such findings does not resemble the classic prior restraints condemned in Near or Keefe, which involved government censorship imposed without judicial determination of wrongdoing.

Further, the injunction is narrowly tailored and does not suppress discussion of church governance or internal disputes within COGIC. The order does not prohibit Defendant from criticizing Plaintiffs, discussing church leadership controversies, or expressing opinions about ongoing disputes. Instead, it prohibits only the continued publication of specific accusations that Plaintiffs committed criminal acts such as fraud, theft, and elder abuse—statements that the Court has already found Plaintiffs are likely to prove false and defamatory. Courts have long recognized that injunctive relief may be appropriate to prevent the repetition of defamatory statements that cause ongoing reputational harm.

Finally, Defendant's reliance on prior-restraint doctrine improperly conflates a preliminary likelihood determination with the absence of any judicial finding at all. The Court's injunction followed an evidentiary hearing and a determination that Plaintiffs demonstrated a likelihood of success on the merits and were suffering ongoing irreparable harm. Defendant's disagreement with those findings does not convert the injunction into unconstitutional censorship. Rule 59(e) does not permit Defendant to relitigate the merits of the Court's determination under the guise of a constitutional objection that he declined to raise when the issue was originally before the Court.

13

**C.**    **The Preliminary Injunction Does Not Improperly Resolves a Factual Dispute Through Suppression Rather Than Adjudication.**

Defendant argues that the preliminary injunction is improper because it restrains speech before the challenged statements have been definitively adjudicated false. He contends that while the Court previously found he acted with reckless disregard for the truth, newly submitted affidavits from Tyson and several witnesses demonstrate that his statements were based on reports from pastors and congregants and supported by documents and records relating to church disputes. According to Defendant, these materials create a genuine factual controversy regarding the truth of the statements and contradict the Court's earlier finding that he failed to investigate. He therefore asserts that, under First Amendment principles, disputes over allegedly defamatory speech must be resolved through full adjudication at trial rather than through pretrial suppression, and that the injunction should be vacated or suspended pending final resolution of the case.

The order at issue enjoins Defendant from publishing, broadcasting, or disseminating further defamatory statements regarding the plaintiffs, including accusations that they engaged in theft, fraud, elder abuse, or similar criminal misconduct. Defendant's affidavits do not substantiate the accusations of "theft," "grand theft," "fraud," or "elder abuse" that formed the basis of the defamatory statements at issue. At most, the affidavits describe a civil property dispute and contested litigation between church entities, not criminal conduct. Even accepting the affidavits at face value, they do not substantiate Defendant's accusations that Plaintiffs engaged in "theft," "grand theft," "fraud," or "elder abuse." Rather, the affidavits consistently describe a civil dispute concerning church governance and ownership of local church property that has been litigated in the Florida courts, not criminal conduct. For example, the affiants repeatedly assert that COGIC filed or maintained litigation claiming ownership of property belonging to Westside Ministry and the Huff family, and that those claims were allegedly incorrect or misleading. (Watts Aff. ¶¶ 14(f),

14

15, 33, 39; Kidd Aff. ¶¶ 21, 26). Such allegations, even if accepted as true, describe nothing more than a dispute over property rights being adjudicated in court. Likewise, the affidavits accuse church representatives of making false or misleading statements in litigation or court filings. (Watts Aff. ¶¶ 25, 37–38; Kidd Aff. ¶¶ 22–23, 40, 63–64). But accusations that a party misrepresented facts in civil proceedings do not establish criminal theft, fraud, or elder abuse; they reflect ordinary litigation disagreements over competing factual narratives. Similarly, Mrs. Huff alleges that Bishop Willie C. Green filed lawsuits asserting ownership of certain Pensacola properties—including property located at 1100 Yonge Street, 51 Marshall Lane, and 2313 North G Street—and that those claims were allegedly false. (Huff Aff. ¶¶ 4–6). She further asserts that the litigation sought control over those properties and continued despite communications suggesting COGIC lacked ownership rights. (Id. ¶¶ 7–11). Even if those allegations were true, they describe a contested property dispute being pursued through civil litigation—the precise mechanism the law provides for resolving such disagreements. The only other concrete incident described is an allegation that a church official attempted to report Pastor Watts to law enforcement for assault. (Watts Aff. ¶ 36; Kidd Aff. ¶ 42). None of these allegations—individually or collectively—describe conduct that satisfies the elements of any criminal offense. Instead, the affidavits consist largely of conclusory characterizations that church leadership attempted to "take" property or acted "deceptively," without identifying facts demonstrating criminal wrongdoing. Accordingly, the affidavits do not supply factual support for Defendant's accusations of theft, fraud, or elder abuse; they merely recount a civil dispute over church property and governance, which cannot transform those accusations into protected statements of fact.

D.   **Defendant's Argument Pertaining to Reputational Harm Mischaracterizes the Law.**

Defendant argues that the Court's finding of irreparable reputational harm cannot justify a speech-restricting injunction because the Sixth Circuit has repeatedly held that speech may not be suppressed merely for being offensive, insulting, or damaging to reputation.

Defendant's reliance on *Ison v. Madison Local School District Board of Education*, 3 F.4th 887 (6th Cir. 2021), *McGlone v. Bell*, 681 F.3d 718 (6th Cir. 2012), *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007), *Cockrel v. Shelby County School District*, 270 F.3d 1036 (6th Cir. 2001), *Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004), and *Parks v. City of Columbus*, 395 F.3d 643 (6th Cir. 2005) is misplaced. Each of those cases involved government restrictions on concededly protected speech in public-forum or public-employee contexts, not a judicial injunction entered after an evidentiary hearing against statements this Court has already determined are likely false and defamatory. The injunction here was not issued because Defendant's speech was merely offensive or controversial; it was issued after the Court found that Defendant repeatedly accused Plaintiffs of serious criminal conduct—including theft, fraud, and elder abuse—determined that Plaintiffs were likely to succeed in proving those accusations false, found that Defendant acted with reckless disregard for the truth, and concluded that Plaintiffs were suffering ongoing reputational and financial harm. (ECF No. 22 at 7–10).

The cases cited by Defendant arise in fundamentally different First Amendment contexts. *Ison* involved a school board policy restricting hostile remarks during a public meeting and was invalidated because it discriminated against political criticism of government officials. 3 F.4th at 894–96. *Leonard* likewise protected a citizen's crude criticism of local officials at a township meeting, holding that the speech—though insulting—did not constitute punishable "fighting words." 477 F.3d at 355–60. *McGlone* addressed a university policy requiring advance permission before engaging in religious speech in campus public forums. 681 F.3d at 730–35. Each case

16

therefore concerned government regulation of political or religious expression that was concededly protected.

The remaining cases are equally inapposite. *Cockrel* involved a First Amendment retaliation claim by a public-school teacher discussing industrial hemp as a matter of public concern. 270 F.3d at 1050–52. *Farhat* addressed whether a public employee's workplace complaints constituted protected speech under the public-concern doctrine. 370 F.3d at 592–94. And *Parks* concerned a city's exclusion of a religious demonstrator from a public festival held in a traditional public forum. 395 F.3d at 648–52. None of these decisions involved defamation, false accusations of criminal conduct, or judicial findings that speech was likely false and causing ongoing reputational harm.

Defendant's cases are inapposite because each involved concededly protected speech— such as political criticism, religious expression, or public commentary—restricted by the government due to its content or forum. None involved a defendant repeatedly accusing identifiable individuals of serious crimes such as theft, fraud, or elder abuse, followed by a judicial finding that those accusations were likely false, published with reckless disregard for the truth, and causing ongoing reputational and financial harm. Defendant's argument therefore collapses the fundamental distinction between protected offensive speech and defamatory false statements of fact. The injunction here was not based on the offensiveness of Tyson's speech but on the Court's determination—after an evidentiary hearing—that Tyson repeatedly published factual accusations of criminal conduct that Plaintiffs are likely to prove false and defamatory and that were causing ongoing reputational injury. (ECF No. 22 at 7–10). Under those circumstances, the injunction does not suppress protected expression; it prevents the continued dissemination of statements the Court has already determined are likely false and defamatory.

Further, Defendant argues that the Court's reliance on *ACT, Inc. v. Worldwide Interactive Network, Inc*., 46 F.4th 489 (6th Cir. 2022), is misplaced because that case involved commercial misconduct rather than expressive activity. That characterization misunderstands both the holding of *ACT* and the nature of the injunction entered here. *ACT* squarely confirms that ongoing reputational and competitive harm resulting from wrongful conduct—including the continued dissemination of unlawful material—constitutes irreparable harm supporting injunctive relief.

Defendant argues that the Court's reliance on *ACT, Inc. v. Worldwide Interactive Network, Inc*., 46 F.4th 489 (6th Cir. 2022), is misplaced because that case involved commercial misconduct rather than expressive activity. That characterization misunderstands both *ACT* and the nature of the injunction entered here. *ACT* confirms that ongoing reputational and competitive harm resulting from wrongful conduct—including the continued dissemination of unlawful material—constitutes irreparable harm supporting injunctive relief.

In *ACT*, the Sixth Circuit affirmed a preliminary injunction where the defendant continued distributing materials that wrongfully copied the plaintiff's intellectual property. The court held that irreparable harm existed because the defendant's conduct was harming the plaintiff's reputation, competitive position, and customer relationships in ways that could not be readily quantified through monetary damages. *ACT*, 46 F.4th at 503–04. The court explained that the defendant's continued distribution of the infringing materials would likely "harm[ ] ACT's reputation, diminish[ ] the perceived value of ACT's intellectual property, and unfairly compet[e] with ACT." *Id*. at 503. Such reputational and marketplace injuries constitute irreparable harm because they are difficult to measure and compensate through damages alone. *Id*.; see also *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*., 511 F.3d 535, 550 (6th Cir. 2007).

18

Defendant attempts to distinguish *ACT* by arguing that it involved "conduct" rather than "speech." But the Sixth Circuit's reasoning did not turn on that distinction; it focused on whether the defendant's ongoing actions were causing continuing reputational and competitive harm that could not be adequately remedied through damages. *ACT*, 46 F.4th at 503–04. That principle applies equally here. After an evidentiary hearing, the Court found that Defendant repeatedly published accusations that Plaintiffs committed serious crimes—including theft, fraud, and elder abuse—that Plaintiffs were likely to prove false and defamatory, and that those statements were causing ongoing reputational and financial harm, including declining church membership and donations. (ECF No. 22 at 7–10). Those findings fall squarely within the category of irreparable harm recognized in *ACT*.

Nor does *International Outdoor* undermine the Court's reasoning. That case involved a government attempt to restrict protected speech based on generalized concerns about its content. Here, the injunction was not based on the offensiveness or viewpoint of Defendant's speech but on the Court's finding that Defendant repeatedly published factual accusations of criminal conduct with reckless disregard for the truth. (ECF No. 22 at 8–10). Under those circumstances, the injunction does not suppress protected expression; it prevents the continued dissemination of statements the Court has already determined are likely false and defamatory.

### E.    The Record Does Sustain a Finding of Actual Malice Necessary to Support a Speech-Restraining Injunction.

Defendant argues that the Court's preliminary finding of actual malice was incorrect because failure to investigate alone does not establish reckless disregard for the truth. He contends that actual malice requires proof that he subjectively doubted the truth of his statements, not merely that the statements were disputed. According to Defendant, the newly submitted affidavits and evidence show that he relied on firsthand accounts, documents, litigation records, and

19

authorization from congregants before making the challenged statements. Because he allegedly relied on identifiable sources and supporting materials, Defendant maintains that the record now shows he did not entertain serious doubts about the truth of his statements and that, at minimum, the supplemented evidence creates a factual dispute that precludes a finding of actual malice at the preliminary injunction stage.

Defendant's attempt to relitigate the Court's actual-malice finding fails because the supplemented record does not undermine the factual basis on which the Court relied. The actual-malice standard requires a plaintiff to prove that the defendant published a statement with knowledge of its falsity or with reckless disregard for its truth. See *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342. Reckless disregard is a subjective inquiry that asks whether the defendant in fact entertained serious doubts about the truth of the publication, not whether a reasonably prudent person would have investigated further. See *St. Amant v. Thompson*, 390 U.S. 727, 731; *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688. Although a mere failure to investigate does not by itself establish reckless disregard, purposeful avoidance of the truth—publishing serious accusations while deliberately avoiding confirmation of their accuracy—falls "in a different category" and may establish actual malice. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. at 692; see also *Perk v. Reader's Digest Association, Inc.*, 931 F.2d 408, 411. Here, the Court found that Defendant repeatedly published accusations that Plaintiffs committed serious crimes—including theft, fraud, and elder abuse—despite the absence of any evidence supporting those accusations and despite failing to investigate their accuracy before disseminating them widely.

The affidavits Defendant now submits do not cure that defect. As previously discussed, those affidavits describe a civil dispute concerning church governance and property ownership,

20

not criminal conduct, and they do not provide factual support for Defendant's accusations that Plaintiffs engaged in theft, fraud, or elder abuse. Nor do they demonstrate that Defendant conducted any meaningful investigation before publishing those allegations as statements of fact. Under *Harte-Hanks Communications, Inc. v. Connaughton*, publishing serious criminal accusations without verifying their factual basis—particularly where the available information reflects only a civil dispute—supports a finding that the speaker acted with reckless disregard for the truth. Accordingly, the supplemented record does not undermine the Court's conclusion that Plaintiffs are likely to establish actual malice.

## CONCLUSION

For the reasons stated herein, Defendant's Motion to Alter or Amend Preliminary Injunction Pursuant to Federal Rule of Civil Procedure 59(e) should be denied.

Respectfully submitted,

**/s/Taurus M. Bailey**
**TAURUS M. BAILEY (BPR #24303)**
Bailey & Bailey, PLLC
44 N. 2nd Street, Suite 502
Memphis, TN 38103
(901) 575-8702 x. 3
taurus@baileybaileylaw.com
Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I, Taurus Bailey, declare as follows:

On March 16, 2026, I caused to be served upon Defendant, through his counsel of record, Robert Felts and Robert Mactavish, by electronic mail at rfelts13@gmail.com and Robert.Mactavish@LLGNational.com, the following document(s): Plaintiffs' Response to Defendant's Motion to Alter or Amend Preliminary Injunction Pursuant to Federal Rule of Civil Procedure 59(e).

 s/Taurus Bailey_____
Taurus Bailey, Attorney At Law