# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN
## DISTRICT OF TENNESSEE WESTERN DIVISION

**CHURCH OF GOD IN CHRIST, INC.**
**individually, and;**

**BOARD OF DIRECTORS also known as**
**GENERAL BOARD OF CHURCH OF**
**GOD IN CHRIST, INC.**

**JONATHAN SAFFOLD, JR., individually and as**
**GENERAL COUNSEL OF CHURCH OF**          No: 2:25-cv-03029-MSN
**GOD IN CHRIST, INC.**

**Plaintiffs,**

**vs.**

**MOSES TYSON, JR.**

**Defendant.**

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND
## PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................2

    Cases ............................................................................................................2

    Statutes and Rules.........................................................................................2

INTRODUCTION ...........................................................................................3

STATEMENT OF FACTS ...............................................................................4

    A.   Plaintiffs Do Not Dispute That Tyson Acted With Express Authorization From Affected Congregants .....................................................................................5

    B.   Plaintiffs Do Not Refute That Tyson Relied on Overlapping Firsthand Accounts and Supporting Materials.....................................................................................5

    C. The Supplemented Record Demonstrates a Genuine Factual Dispute Not Before the Court at the Preliminary Injunction Hearing .............................................................6

LEGAL STANDARD ......................................................................................7

ARGUMENT...................................................................................................9

    I.   The Preliminary Injunction Is a Classic Prior Restraint Subject to the Highest Constitutional Scrutiny...................................................................................9

    II.   The Supplemented Record Directly Undermines the Court's Actual-Malice Finding ........................................................................................................10

    III.   Plaintiffs Mischaracterize the Nature and Relevance of the Affidavits ..............12

    IV.   Plaintiffs Do Not Address the Prior Restraint Problem ...................................14

    V.   The Preliminary Injunction Is Impermissibly Overbroad and Not Narrowly Tailored .......................................................................................................15

CONCLUSION ..............................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*CBS, Inc. v. Young,*
    522 F.2d 234 (6th Cir. 1975) ……………………………………….……8, 9, 15, 17

*GenCorp, Inc. v. Am. Int'l Underwriters,*
    178 F.3d 804 (6th Cir. 1999) ……………………………………………………..8, 12

*Harte-Hanks Commc'ns, Inc. v. Connaughton,*
    491 U.S. 657 (1989) …………………………………………………………...12, 13

*Milkovich v. Lorain Journal Co.,*
    497 U.S. 1 (1990) …………………………………………………………………. 17

*Nebraska Press Ass'n v. Stuart,*
    427 U.S. 539 (1976) …………………………………………….…..... 8, 9, 14, 15, 17

*NAACP v. Claiborne Hardware Co.,*
    458 U.S. 886 (1982) …………………………………………………………. 17

*Near v. Minnesota,*
    283 U.S. 697 (1931) ………………………………………..……9, 14, 15, 17

*Organization for a Better Austin v. Keefe,*
    402 U.S. 415 (1971) …………………………………………………………..9, 14

*Procter & Gamble Co. v. Bankers Trust Co.,*
    78 F.3d 219 (6th Cir. 1996) …………………………………….….………….16

*St. Amant v. Thompson,*
    390 U.S. 727 (1968) ………………………………………….…….… 12, 13

**Statutes and Rules**

Fed. R. Civ. P. 59(e) ................................................................................ 4, 7, 12

Fed. R. Civ. P. 54(b) …………………………………………………….…… 4, 7, 8

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO ALTER OR AMEND PRELIMINARY INJUNCTION**

Defendant Moses Tyson, Jr., ("Tyson"), by and through undersigned counsel, respectfully submits this Reply in further support of his Motion to Alter or Amend the Preliminary Injunction. Plaintiffs' opposition confirms that the injunction, as entered, cannot stand under controlling First Amendment principles and that reconsideration is warranted. Plaintiffs' response relies heavily on procedural waiver arguments and characterizations of the supplemented record, but it does not meaningfully address the constitutional defects in the injunction or the legal standards governing interlocutory reconsideration.

For the reasons set forth below and in Defendant's opening motion, the injunction should be modified or vacated.

## <u>INTRODUCTION</u>

This case presents a paradigmatic First Amendment violation: a speech-restricting injunction entered on a one-sided record, without final adjudication of falsity, and now contradicted by sworn evidence.

Plaintiffs' opposition confirms that the preliminary injunction was entered on an incomplete record and without the independent constitutional review required before restraining speech. Rather than address the First Amendment principles governing prior restraints, Plaintiffs rely almost entirely on procedural waiver arguments and the assertion that Defendant's supplemented evidence is "not new." Neither position withstands scrutiny.

The injunction rests on the factual premise that Tyson acted without investigation and possessed no supporting information. The supplemented record now before the Court directly contradicts that premise. Sworn affidavits and documentary materials establish that Tyson acted

as an authorized representative of affected congregants, relied on overlapping firsthand accounts, and possessed documentary, audio, and public-record materials before speaking. These facts fundamentally alter the actual-malice analysis and cannot be reconciled with the Court's prior finding that "no evidence" supported Tyson's statements.

Because the injunction operates as a prior restraint and the supplemented record reveals a genuine factual dispute regarding the truth of the challenged statements, reconsideration is required under Rule 54(b) and Rule 59(e) to prevent manifest injustice. Continued suppression of contested speech on a one-sided record is incompatible with the First Amendment and the standards governing interlocutory relief.

## STATEMENT OF FACTS

This action arises from public statements made by Defendant Moses Tyson, Jr., a long-standing pastor within the Church of God in Christ ("COGIC"). Plaintiffs initiated this lawsuit in October 2025, alleging that Tyson had "recklessly and knowingly accus[ed] Plaintiffs of severe felonious crimes including grand theft, fraud, and elder abuse." (ECF No. 1, Notice of Removal at PageID 9–21.) Plaintiffs simultaneously obtained an *ex parte* Temporary Restraining Order ("TRO") purporting to prohibit Tyson from making any further "defamatory" statements concerning Plaintiffs or COGIC leadership. (ECF No. 9, Emergency Motion at PageID 2.)

Tyson removed the action to this Court on November 10, 2025. (ECF No. 9 at PageID 1–5.) Because the state-court TRO expired by operation of federal law, Plaintiffs filed an Emergency Motion to Continue the TRO and Set Hearing for Preliminary Injunction the following day. (Id.)

The Court conducted a preliminary injunction hearing on January 6, 2026. (Hr'g Tr., Jan. 6, 2026.) Following that hearing, the Court entered an order granting Plaintiffs' motion and

prohibiting Tyson from "publishing, broadcasting or disseminating any further defamatory statements regarding the Plaintiffs, including but not limited to, any references to 'thieves,' 'grand theft,' 'elder abuse,' 'fraud,' or other similar accusations." (ECF No. 22 at PageID 12.) The Court's ruling was based solely on the preliminary evidentiary presentation made at the hearing. The sworn testimony, affidavits, and documentary materials submitted with the present motion were not before the Court at that time and are now offered as part of the supplemented record.

### A. Plaintiffs Do Not Dispute That Tyson Acted with Express Authorization from Affected Congregants

Plaintiffs' opposition does not meaningfully contest the sworn statements establishing that Tyson acted with express authorization from congregants involved in ongoing disputes with COGIC. The sworn statements of Pastor Kenneth Watts, Frankie Lee Huff, and Dr. Felicia Kidd each confirm that Tyson was designated as a liaison, advocate, or representative to communicate concerns to church leadership. These authorizations predated the challenged statements and reflect Tyson's role as a spokesperson for individuals directly involved in the underlying controversies.

### B. Plaintiffs Do Not Refute That Tyson Relied on Overlapping Firsthand Accounts and Supporting Materials

Plaintiffs' opposition likewise does not dispute the substance of the supplemented affidavits showing that Tyson's statements arose from overlapping firsthand accounts provided by multiple pastors and congregants involved in ongoing disputes with COGIC. The sworn statements of Pastor Kenneth Watts, Frankie Lee Huff, and Dr. Felicia Kidd each describe direct involvement in the underlying controversies, including property disputes, internal governance conflicts, and communications with COGIC leadership. These witnesses attest that they personally provided Tyson with information concerning those events before he made the challenged statements.

The supplemented record further reflects that these witnesses possessed and shared documentary, audio, video, and public-record materials relating to the same disputes. Tyson's affidavit confirms that he maintained records concerning the matters reported to him, including documents and recordings supplied by affected congregants. Pastor Watts attests to possessing court filings, internal correspondence, and other materials relating to the disputes involving his ministry. Ms. Huff and Dr. Kidd likewise attest to possessing communications, documents, and other evidence concerning their respective disputes with COGIC.

These accounts are consistent with one another and describe the same underlying events rather than isolated or unrelated grievances. Plaintiffs do not challenge the authenticity of these materials, the witnesses' personal knowledge, or the fact that these accounts were provided to Tyson before he made the statements at issue. The supplemented record therefore reflects that Tyson's statements were based on information received from multiple firsthand sources and supported by materials in their possession.

## C. The Supplemented Record Demonstrates a Genuine Factual Dispute Not Before the Court at the Preliminary Injunction Hearing

Plaintiffs' opposition does not dispute that the affidavits and materials submitted with this motion were not part of the record at the January 6, 2026, preliminary injunction hearing. The Court's ruling was based solely on the evidence presented at that hearing, and the supplemented record now before the Court contains information that was neither offered nor available at that time.

The sworn statements of Tyson, Pastor Watts, Ms. Huff, and Dr. Kidd each describe events, communications, and documentary materials that pre-date the challenged statements and bear directly on the underlying disputes between congregants and COGIC leadership. These witnesses

attest to their personal involvement in those disputes and to the information they provided to Tyson before he made the statements at issue. Their accounts reference overlapping events, shared communications, and materials relating to property litigation, internal governance conflicts, and interactions with COGIC officials.

The supplemented record also reflects that these witnesses possessed and provided Tyson with documents, recordings, and public-record materials concerning the same controversies. Tyson's affidavit confirms that he maintained records relating to the matters reported to him, including materials supplied by affected congregants. Plaintiffs do not challenge the authenticity of these materials, the witnesses' personal knowledge, or the fact that this information was communicated to Tyson before the challenged statements were made.

Taken together, the supplemented affidavits and materials reflect a factual dispute regarding the events underlying Tyson's statements, one that was not before the Court at the time the preliminary injunction was issued. Plaintiffs do not contest the existence of these competing accounts or the fact that they were not part of the original record. The supplemented record, therefore, presents factual information that materially differs from the evidence previously considered and that bears directly on the issues of context, basis, and factual foundation for Tyson's statements.

## **LEGAL STANDARD**

Plaintiffs' assertion that Rule 59(e) is categorically inapplicable misstates the governing framework. Although Rule 54(b) governs interlocutory orders, federal courts routinely treat motions styled under Rule 59(e) as requests for reconsideration under Rule 54(b) when the challenged order is not final. The label attached to the motion is not dispositive; what matters is

whether the Court has authority to revisit an interlocutory ruling. It does. The Court retains broad discretion to revise any order that adjudicates fewer than all claims or the rights of fewer than all parties. Courts in this Circuit routinely apply the substantive standards of Rule 59(e) when evaluating reconsideration of interlocutory orders, even when Rule 54(b) supplies the procedural vehicle.

Reconsideration is appropriate where the moving party presents evidence that was not part of the original record, where the prior ruling rests on a factual premise that is now contradicted, or where revision is necessary to prevent manifest injustice. *See GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Each of those circumstances is present here. The affidavits and documentary materials submitted with this motion were not before the Court at the preliminary injunction hearing, and they directly undermine the factual basis on which the injunction was issued.

Because the order at issue restrains speech, the Court's reconsideration analysis must also incorporate the heightened constitutional scrutiny applicable to prior restraints. Prior restraints carry a "heavy presumption" against validity and require courts to independently examine the full record to ensure that protected expression is not suppressed. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976); *CBS, Inc. v. Young*, 522 F.2d 234, 238–39 (6th Cir. 1975). This independent review obligation applies even where a party did not oppose the injunction below, and it cannot be displaced by waiver arguments or procedural defaults.

The Court has both the authority and the constitutional obligation to revisit the preliminary injunction in light of the supplemented record. Where, as here, the injunction restricts speech and the factual foundation for that restriction has materially changed, reconsideration is not only permissible but also required to prevent manifest injustice.

# **ARGUMENT**

**I.**      **The Preliminary Injunction Is a Classic Prior Restraint Subject to the Highest Constitutional Scrutiny**

Plaintiffs' opposition rests almost entirely on the assertion that Tyson "waived" opposition to the preliminary injunction by not presenting evidence earlier. That argument cannot sustain a speech-restricting injunction. A prior restraint cannot be upheld on the basis of waiver, silence, or a one-sided record. The Supreme Court has long held that courts must conduct independent constitutional review before suppressing speech, regardless of whether the defendant opposed the injunction below. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (prior restraints carry a "heavy presumption" against validity); *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 418–20 (1971) (vacating injunction entered on a one-sided record); *Near v. Minnesota*, 283 U.S. 697, 713–14 (1931).

The Sixth Circuit applies the same rule. In *CBS, Inc. v. Young*, the court held that a speech-restricting injunction cannot stand where the record is incomplete or insufficiently tested, emphasizing that courts must independently examine the factual basis for any restriction on expression. Plaintiffs' waiver theory is incompatible with this doctrine. The First Amendment does not permit a court to "freeze" one side of a public controversy simply because the restrained party did not present evidence at an earlier stage.

Nor can preliminary findings justify suppression. The Supreme Court has repeatedly rejected attempts to restrain speech based on predictive assessments of falsity or harm. *Keefe* makes clear that even speech alleged to be defamatory cannot be enjoined prior to adjudication. Even where defamation is ultimately proven, courts have consistently held that damages, not prior

restraints, are the appropriate remedy. *Nebraska Press* likewise holds that courts may not rely on incomplete or preliminary records to justify prior restraints.

Here, the injunction prohibits Tyson from making future statements on matters of ongoing dispute. Because the order operates prospectively and suppresses speech before any final adjudication of falsity, it is a classic prior restraint subject to the highest constitutional scrutiny. Plaintiffs' reliance on waiver cannot overcome the constitutional presumption against such restraints or the Court's obligation to independently review the supplemented record now before it.

Courts have repeatedly emphasized that the procedural posture of a case cannot dilute the constitutional protections against prior restraints. Whether an injunction is entered after a full evidentiary hearing, a truncated presentation, or even by consent, the First Amendment requires the Court to ensure that no order suppresses speech absent a fully developed record and a final adjudication of falsity. The procedural history here, an *ex parte* TRO followed by a preliminary hearing without the supplemented evidence, only heightens the need for caution. A prior restraint entered on an incomplete record is not merely disfavored; it is presumptively unconstitutional.

## II. The Supplemented Record Directly Undermines the Court's Actual-Malice Finding

The preliminary injunction rested on a critical factual premise: that "there was no evidence" Tyson investigated the truth of his statements or possessed supporting information before speaking. (Order at PageID 8.) The Court must independently review the record to determine whether the evidence is sufficient to support a finding of actual malice. Plaintiffs' opposition does not, and cannot, reconcile that finding with the supplemented record now before the Court. The Court's prior finding that there was "no evidence" supporting Defendant's investigation or factual basis is no longer tenable in light of the supplemented record now before the Court. The new affidavits

and materials fundamentally alter the actual-malice analysis and directly contradict the factual assumptions underlying the injunction.

The supplemented record establishes that Tyson relied on identified firsthand sources, not rumor or speculation. Pastor Watts, Ms. Huff, and Dr. Kidd each attest that they personally communicated with Tyson about the underlying disputes, provided him with information, and authorized him to speak on their behalf. These witnesses describe their own involvement in the events at issue and confirm that Tyson's statements reflected the concerns they relayed to him.

Also, the supplemented record shows that Tyson possessed documents, recordings, and court filings relating to the same controversies before making the challenged statements. Tyson attests that he maintained records provided by congregants, including documentary, audio, and public-record materials. Pastor Watts confirms possession of court filings and internal correspondence; Ms. Huff and Dr. Kidd attest to possessing communications and documentary evidence concerning their disputes with COGIC. Plaintiffs offer no response challenging the existence or authenticity of these materials. Additionally, the affidavits reflect overlapping factual accounts from multiple witnesses describing the same underlying events; property disputes, governance conflicts, and representations made in litigation. These accounts are consistent with one another and directly contradict the notion that Tyson acted with "serious doubts" about the truth of the information he received.

The supplemented record also demonstrates that Tyson's statements arose within the context of an ongoing, highly contested internal dispute, precisely the type of environment in which courts recognize that speakers often rely on the accounts of those directly involved. In such settings, disagreement, conflicting narratives, and sharply divergent interpretations of events are common. The existence of multiple corroborating accounts from individuals with firsthand

involvement is fundamentally incompatible with a finding that Tyson acted with "serious doubts" about the truth of the information he received. At a minimum, the supplemented record establishes that reasonable minds could differ, which forecloses any preliminary finding of actual malice.

Under *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), actual malice cannot be inferred where a speaker relies on identified sources unless the evidence shows the speaker had obvious reasons to doubt their veracity. The supplemented record contains no such evidence. On the contrary, the witnesses' sworn statements confirm that Tyson had no reason to doubt the accuracy of the information provided to him.

Likewise, *Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 688 (1989), makes clear that actual malice requires more than a failure to investigate; it requires purposeful avoidance of the truth or reliance on information known to be false. The supplemented record shows neither. Instead, it demonstrates that Tyson acted based on the accounts and materials provided by individuals directly involved in the disputes.

Because the supplemented record directly contradicts the factual premise on which the injunction was issued, the Court's prior actual-malice finding cannot stand on the existing record. At a minimum, the new evidence precludes any preliminary determination that Plaintiffs are likely to establish actual malice at trial. Continued enforcement of a speech-restricting injunction in the face of such a factual dispute is incompatible with *St. Amant*, *Harte-Hanks*, and the First Amendment principles governing prior restraints.

### III.     Plaintiffs Mischaracterize the Nature and Relevance of the Affidavits

The Plaintiffs contend that the affidavits submitted with this motion are "not new" because the witnesses possessed personal knowledge of the underlying events. That argument misunderstands both the purpose of Rule 59(e) and the factual posture of this case. Rule 59(e) does

not require that evidence be newly created; it requires only that the evidence was not previously available through reasonable diligence or was not part of the record the Court relied upon. See *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). The affidavits here satisfy that standard. They were not before the Court at the preliminary injunction hearing, and the circumstances surrounding the internal disputes, witness reluctance, and the chilling effect of the TRO prevented their earlier submission.

More importantly, Plaintiffs' own descriptions confirm that the affidavits contain precisely the type of information that was missing from the preliminary record and that bears directly on the Court's prior findings. The affidavits provide:

a) first-hand accounts from individuals directly involved in the underlying disputes;

b) documentary references to materials in their possession, including communications, court filings, and internal correspondence;

c) overlapping factual narratives describing the same events from multiple perspectives; and

d) materials directly relevant to the issues of truth, context, and actual malice.

These are not conclusory statements or post-hoc rationalizations. They are sworn accounts from witnesses with personal involvement in the controversies that gave rise to Tyson's statements. Plaintiffs offer no response disputing the authenticity of these materials or the witnesses' personal knowledge.

This evidence goes to the heart of the Court's prior actual-malice finding. The injunction rested on the conclusion that Tyson acted with reckless disregard because "there was no evidence" he investigated or possessed supporting information. (Order at PageID 8.) The supplemented record now before the Court directly contradicts that premise. Under *St. Amant* and *Harte-Hanks*,

13

evidence that a speaker relied on identified sources, possessed supporting materials, and acted pursuant to express authorization is material to the actual-malice inquiry and cannot be disregarded at the preliminary stage.

Because Plaintiffs' characterization of the affidavits is inconsistent with both the record and the governing legal standard, their argument provides no basis to maintain a speech-restricting injunction on the prior record.

## IV.      Plaintiffs Do Not Address the Prior Restraint Problem

Plaintiffs' request for sanctions further underscores the existence of a genuine factual dispute. A claim cannot simultaneously be deemed "frivolous" and supported by sworn affidavits from multiple firsthand witnesses. The presence of competing sworn accounts confirms that the issues presented are for adjudication at trial, not resolution through pretrial suppression of speech.

Plaintiffs attempt to reduce the First Amendment issue to a single proposition, that "defamatory speech is not protected." That framing sidesteps the core constitutional defect in the injunction. Speech cannot be enjoined as "defamatory" unless and until a court has made a final adjudication of falsity. A preliminary finding of likely falsity is not a constitutional substitute for a verdict. The injunction here prohibits broad categories of future speech based solely on predictive assessments made at the preliminary-injunction stage. That is the defining feature of a prior restraint.

The Supreme Court has repeatedly rejected attempts to restrain speech on this basis. In *Organization for a Better Austin v. Keefe*, the Court vacated an injunction prohibiting allegedly defamatory leaflets, holding that speech may not be suppressed before adjudication of falsity. *Near v. Minnesota* likewise held that courts may not enjoin future speech based on allegations of defamation, emphasizing that such orders are "the essence of censorship." *Nebraska Press Ass'n*

*v. Stuart* reaffirmed that prior restraints carry a "heavy presumption" against validity and cannot rest on speculative or preliminary findings.

The Sixth Circuit applies the same rule. In *CBS, Inc. v. Young*, the court held that a speech-restricting injunction cannot stand where it suppresses future expression before the underlying factual disputes have been adjudicated. The court emphasized that even serious allegations cannot justify pretrial censorship.

The injunction at issue mirrors the restraints condemned in these cases. It prohibits Tyson from making any "defamatory statements," including references to "thieves," "fraud," "elder abuse," and similar accusations, terms the order treats as adjudicated facts even though the truth of the underlying statements remains contested. Plaintiffs' opposition does not attempt to defend the injunction under the standards articulated in *Keefe*, *Near*, *Nebraska Press*, or *CBS v. Young*. Instead, Plaintiffs rely on the premise that the Court's preliminary findings are sufficient to justify ongoing suppression.

They are not. A prior restraint cannot be upheld on the basis of preliminary determinations, one-sided records, or waiver arguments. Because the injunction suppresses speech before adjudication of falsity, it falls squarely within the category of restraints the Supreme Court has repeatedly held unconstitutional.

**V.     The Preliminary Injunction Is Impermissibly Overbroad and Not Narrowly Tailored**

Before addressing the specific language of the injunction, it bears emphasis that the Supreme Court has consistently required extraordinary precision when courts restrict speech, particularly in defamation-related contexts. Even narrow injunctions must be tied to specific adjudicated statements, not broad categories of expression. When an order prohibits undefined

"defamatory statements" or restricts speech by reference to general subject matter, it fails the requirement of narrow tailoring and invites self-censorship. The injunction here exemplifies this danger: its categorical prohibitions extend far beyond any statement actually litigated and operate as a sweeping ban on commentary about ongoing disputes.

Even Plaintiffs do not meaningfully defend the breadth of the injunction, nor could they. The order prohibits Tyson from making any "defamatory statements" and from using terms such as "thieves," "fraud," "elder abuse," or "similar accusations." (Order at PageID 12.) This language is not limited to the specific statements at issue in the complaint or to any adjudicated findings of falsity. Instead, it sweeps broadly across entire categories of speech and prohibits future expression based on a predictive assessment of what might be defamatory.

Such a restraint is impermissibly overbroad. A prior restraint must be "precise and narrowly tailored," not a blanket prohibition on speech relating to disputed matters. *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226–27 (6th Cir. 1996). The injunction fails strict scrutiny for at least five independent reasons:

1. The order is vague. Terms such as "defamatory statements" and "similar accusations" provide no clear boundary between prohibited and permissible speech. A speaker cannot know in advance what statements might be deemed "similar," and the order invites self-censorship to avoid the risk of contempt.

2. The order extends beyond the statements actually presented to the Court. The injunction does not identify the specific statements found likely defamatory; instead, it bars Tyson from making any future statements that Plaintiffs might characterize as accusatory. This is precisely the type of categorical restraint condemned in *Keefe*, where the Supreme

Court held that courts may not prohibit broad classes of speech based on allegations of defamation.

3. The order chills protected speech. The prohibited terms - "thieves," "fraud," "elder abuse," and others - are not inherently defamatory; they may be used in rhetorical, hyperbolic, or opinion-based commentary, particularly in the context of internal disputes within a religious organization. By prohibiting these terms outright, the injunction suppresses speech that may ultimately be protected under *Milkovich* (distinguishing fact from opinion) and *Claiborne Hardware* (protecting advocacy and rhetorical hyperbole). See *Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990) and *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886 (1982).

4. The order suppresses commentary on ongoing disputes. The affidavits submitted with this motion demonstrate that the underlying controversies remain active and contested. Enjoining Tyson from discussing those matters, while Plaintiffs remain free to speak publicly, creates the very imbalance the Supreme Court warned against in *Near* and *Nebraska Press*.

5. Finally, the injunction's breadth is incompatible with the Sixth Circuit's directive that speech-restricting orders must be narrowly drawn and supported by a fully developed record. See *CBS v. Young*, 522 F.2d 234, 238–39 (6th Cir. 1975). The record before the Court at the preliminary injunction stage did not, and could not, justify a sweeping prohibition on entire categories of speech.

Because the injunction is vague, overbroad, and not narrowly tailored to any adjudicated finding of falsity, it cannot survive the heightened scrutiny applicable to prior restraints. At

minimum, the order must be substantially narrowed to avoid suppressing protected expression pending final adjudication.

## **<u>CONCLUSION</u>**

The supplemented record fundamentally alters the factual and constitutional landscape on which the preliminary injunction was issued. The affidavits and documentary materials now before the Court directly contradict the prior finding that Tyson acted without investigation or supporting information, and they establish the existence of a genuine factual dispute that cannot be resolved through pretrial suppression. Plaintiffs' opposition does not meaningfully address the prior-restraint doctrine, does not reconcile the new evidence with the Court's actual-malice analysis, and does not provide a constitutional basis for continuing to restrain speech on a preliminary record.

Because the injunction operates as a prior restraint and rests on factual premises now undermined by the supplemented record, continued enforcement would result in manifest injustice. The First Amendment requires that contested speech be adjudicated, not suppressed in advance of trial. The Court's obligation to independently examine the full record before restraining speech further underscores the need to revisit the injunction in light of the supplemented evidence.

For these reasons, Defendant respectfully requests that the Court:

1.  Vacate the preliminary injunction in its entirety, or

2.  Substantially narrow the injunction to avoid restraining protected speech pending final adjudication.

Respectfully Submitted,

**LENTO LAW GROUP, P.C.**

Robert S. Mactavish, Esquire
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
*Attorney for Defendant*

*And*

_/s/Robert Felts_____
Robert Felts, Esquire
TN BPR: 042052
70 N. Ocoee Street
Cleveland, TN 37311
(T) 423.322.9887
(F) 856.375.1010
(E) rfelts13@gmail.com
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2026, I electronically filed the foregoing Defendant's Reply in Support of Motion to Alter or Amend Preliminary Injunction with the Clerk of this Court using the Court's CM/ECF system, which will send notice of filing to all counsel of record. A copy was also served via electronic mail upon all parties.

Respectfully Submitted,

Robert S. Mactavish, Esquire
*Attorney for Defendant*